[No. 10421-1-II.   Division Two.   May 24, 1988.]

ALBERT O. SUTER, ET AL, *Appellants,* v. VIRGIL R. LEE & SON, INC., ET AL, *Respondents.*

---

*William J. Rush* and *Rush, Hannula & Harkins,* for appellants.

*James A. Vander Stoep* and *Armstrong, Vander Stoep, Remund & Kelly,* for respondents.

ALEXANDER, J.—Albert and Anna Suter, husband and wife, and their daughter Karen appeal a summary judgment order of the Lewis County Superior Court dismissing their lawsuit against Virgil R. Lee & Sons, Inc. (Lee agency). We affirm, holding as a matter of law that the Lee agency owed no duty to the Suters to recommend a certain level of automobile liability insurance coverage.

On January 2, 1978, while Karen Suter was operating the family automobile, she collided with an automobile driven by Britt Shero. As a result, Shero was injured and his passenger, Debbie Adams, died.

Commencing in 1973, the Suters obtained their personal automobile insurance through the auspices of the Mitchell Insurance Agency in Chehalis. Before 1973 the Suters had obtained insurance from the Mitchell Agency on their home and other buildings. The liability limits on the automobile policy they obtained in 1973 were $25,000 per person and $50,000 per incident. In 1975, the Mitchell Agency placed the Suters' automobile policy with the Great American Insurance Company at the same policy limits. The Mitchell Agency was purchased by Virgil R. Lee & Sons, Inc., in 1977. The Suters maintained the Great American policy with the same liability limits up to the time of Karen's accident.

In 1979, Britt Shero commenced a suit against the Suters for the damages he sustained in his collision with Karen. The Suters, in turn, brought this action against the Mitchell Agency, the Great American Insurance Company,[1] and the Lee agency. The Suters alleged that the Lee agency had

---

[1]The Suters allege that Great American had negligently handled its claim and inhibited its settlement with Shero.

held itself out as an insurance specialist and that as a specialist it was obligated to recommend adequate insurance coverage for the Suters.

The Great American Insurance Company settled with the Suters for $325,000.[2] The Suters ultimately agreed to entry of a judgment against them and in favor of Shero in the amount of $2,200,000. Apparently, as a part of that settlement, the Suters passed through to Shero the $325,000 they received in settlement from Great American. Shero agreed not to execute on the Suters' assets in order to recover the balance of the judgment, conditioned upon the Suters' partial assignment to Shero of the proceeds of their cause of action against the Lee agency.

Lee moved for a summary judgment of dismissal claiming, primarily, that it owed no duty to the Suters to recommend certain liability policy limits. Before the hearing on the matter, the trial court was presented with a number of affidavits, including that of William Lee, casualty manager of the Great American Insurance Company. William Lee indicated that Suter first became an automobile liability insurance policyholder with Great American beginning in September 1975 and that the Suters were directly billed by Great American for this coverage until 1978.

Larry Peterson, an employee of the Lee agency, indicated that at no time after the Lee agency purchased the Mitchell Agency and before the accident did it have any contact with the Suters to discuss the adequacy of their automobile insurance policy. According to him, the Suters renewed their policy directly with Great American.

The Suters relied heavily on the affidavit of Delbert B. Anderson, an insurance expert. He indicated that an insurance agent selling automobile liability insurance should inquire into an insured's assets, income, occupation, and real estate holdings, and should recommend liability coverage for the insured adequate to protect the insured's assets.

---

[2]Great American also settled with Debbie Adams' family for $25,000. It offered another $25,000 to Britt Shero, but he refused the tender.

After reviewing the Suters' financial condition as it existed in 1973 through 1978, he opined that the Lee agency failed to act prudently after purchasing the Mitchell Agency in not recommending "at least a single liability limit of $300,000 to Mr. Suter, as a minimum."

The trial court granted summary judgment to the Lee agency, concluding that, based on Anderson's affidavit, the limit of Lee's liability was $300,000. As a result, the court held that because the Suters had received a $325,000 settlement, the Lee agency's liability was extinguished.

The facts here are not in serious dispute. The case, therefore, is ripe for summary judgment, the issue being one of law. CR 56(c). In our judgment, the dispositive issue is as follows: Did the Lee agency, after acquiring the Mitchell Agency, have a duty to contact the Suters and recommend that they purchase an automobile liability policy with greater limits than that in effect at the time of the accident?[3]

The Suters contend that the question of duty here is a factual question which cannot be resolved on summary judgment. They point to Delbert Anderson's affidavit and argue that a finder of fact might conclude from that evidence that the Lee agency failed to act prudently in not recommending to the Suters that they increase their coverage. While we recognize that if material fact questions exist, a summary judgment should not be granted, we do not believe that we are confronted with a material factual question.

---

[3]The Suters contend that the Lee agency cannot raise this issue because the trial court did not grant the summary judgment on this ground, and the Lee agency did not cross-appeal this decision. Nevertheless, the appellate court can uphold the trial court's judgment upon any theory established by the pleadings and supported by the proof even if the trial court did not consider that theory. *LaMon v. Butler*, 110 Wn.2d 216, 223, 751 P.2d 842 (1988). This principle is premised on the proposition that the parties had a full opportunity to develop facts relevant to the decision. *Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 414, 553 P.2d 107 (1976). Here, although the trial court did not base its decision on the duty issue, the issue was fully developed and argued at the summary judgment hearing.

■ The existence of a duty is a question of law for the court, to be considered in light of public policy considerations. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982). Although Washington courts have not directly reached the precise issue we have here, the court in *Hardt v. Brink,* 192 F. Supp. 879 (D.C. Wash. 1961), applying Washington substantive law, stated the general rule: Ordinarily, "[n]o affirmative duty to advise is assumed by the mere creation of an agency relationship." *Hardt,* 192 F. Supp. at 880.

■ We find ourselves in accord with the view expressed in another jurisdiction, to the effect that "[t]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection . . ." *Jones v. Grewe,* 189 Cal. App. 3d 950, 956, 234 Cal. Rptr. 717, 720 (1987), *review denied,* May 14, 1987. That decision was justified on the basis that ordinarily the insured knows the extent of his personal assets and his ability to pay better than the insurance agency. *Jones,* 234 Cal. Rptr. at 721. Thus, it is the insured's responsibility to advise the agent of the insurance that he wants, including the limits of the policy to be issued. *Jones,* 234 Cal. Rptr. at 721.

A duty to advise as to the adequacy of insurance may arise, however, when a special relationship exists between agent and buyer. The court in *Sandbulte v. Farm Bur. Mut. Ins. Co.,* 343 N.W.2d 457, 464 (Iowa 1984) explained that an expanded agency situation may arise if an agent holds himself out as an insurance specialist and receives compensation for consultation and advice apart from the premiums paid by the insured. A special relationship may also be shown by a long–standing relationship, some type of interaction on the question of coverage, coupled with the insured's reliance on the expertise of the insurance agent to the insured's detriment. *Bruner v. League Gen. Ins. Co.,* 164 Mich. App. 28, 416 N.W.2d 318, 320 (1987).

Other courts agree that there is no duty, absent a special

relationship. *Pabitzky v. Frager,* 164 Cal. App. 3d 401, 210 Cal. Rptr. 426, 427 (1985); *European Bakers, Ltd. v. Holman,* 177 Ga. App. 172, 338 S.E.2d 702 (1985), *cert. denied,* January 17, 1986; *Smith v. Millers Mut. Ins. Co.,* 419 So. 2d 59, 64–65 (La. Ct. App. 1982), *cert. denied,* 422 So. 2d 155 (La. 1982); *Palmer v. Pacific Indem. Co.,* 74 Mich. App. 259, 254 N.W.2d 52, 56 (1977); *Polski v. Powers,* 221 Neb. 361, 377 N.W.2d 106, 108 (1985); *Manzer v. Pentico,* 209 Neb. 364, 307 N.W.2d 812, 813 (1981); *Blonsky v. Allstate Ins. Co.,* 128 Misc. 2d 981, 491 N.Y.S.2d 895, 897 (Sup. Ct. 1985).

Here, even viewing the materials presented to the trial court most favorably to the Suters, there are no facts showing any special relationship between the Suters and the Lee agency that would impose a greater duty on the agency. The Suters had been a Lee agency client only since 1977, and apparently the Suters never consulted with anyone from that agency concerning the adequacy of their automobile liability coverage. Furthermore, the Lee agency never gave them any advice in that regard. In fact, the only renewal of the automobile policy between 1977 and 1978 was handled directly by Great American. Thus, there is no evidence to suggest that a special relationship between the Suters and the Lee agency existed.[4] Under these circumstances, the Lee agency had no duty to contact the Suters and advise them concerning the adequacy of their liability coverage. The trial court properly granted a summary judgment of dismissal.

Having concluded that the summary judgment was properly granted, it is unnecessary for us to reach the Suters' contention that the trial court erred in (1) determining that the maximum liability of the Lee agency was $300,000, and (2) giving Lee credit for the $300,000 payment.

---

[4]The Suters' counsel concedes that the Lee agency would not be vicariously liable to the Suters if it was determined that the Mitchell Agency had a duty to advise the Suters as to the adequacy of their coverage.

We affirm.

REED, C.J., and WORSWICK, J., concur.

Review denied by Supreme Court September 1, 1988.