[No. 12794-0-III.   Division Three.   November 16, 1993.]

EDWARD E. GATES, *Appellant*, v. RON L. LOGAN, ET AL, *Respondents*.

*Robert S. Wagner* (*Robert A. Miller*, of counsel), for appellant.

*Douglas F. Foley* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman*, for respondents.

THOMPSON, C.J. — Edward E. Gates, individually and for the benefit of Elwood Earl Kitchen, appeals the dismissal of his negligence claims against Ron L. Logan, doing business as Logan Insurance Agency. He contends the trial court erred in refusing to find that Mr. Logan, an insurance agent, owed a duty to his customer, Mr. Kitchen, to recommend higher automobile liability limits. We affirm.

In September 1989, Edward E. Gates was seriously injured in a motor vehicle accident caused by Mr. Kitchen. When the accident occurred, Mr. Kitchen and his wife were

insured by Farmers Insurance Company of Washington (Farmers). The insurance policy was first obtained in 1985 through Mr. Logan. The policy had liability limits of $50,000 per person and $100,000 per accident ($50,000/$100,000).

Mr. Gates filed a negligence action against the Kitchens. Kitchens stipulated to entry of a $300,000 judgment against them and assigned their present claim against Mr. Logan and Farmers to Mr. Gates. In September 1991, Mr. Gates filed this action individually and for the benefit of Kitchens, alleging negligence and violation of the Consumer Protection Act by Mr. Logan and Farmers. Mr. Kitchen has since passed away.

Mr. Logan moved for summary judgment of dismissal, arguing that defendants owed Kitchens (the insureds) no duty to advise or recommend liability limits higher than those requested by Mr. Kitchen. In support of his motion, Mr. Logan filed an affidavit stating that Mr. Kitchen came to his office in 1985 and made inquiry as to automobile insurance. He told Mr. Logan his current policy was being canceled because of his driving record, the policy provided liability limits of $50,000/$100,000, and he wanted those same limits on a new policy. According to Mr. Logan, Mr. Kitchen did not ask for advice as to appropriate coverage limits and although Mr. Logan told him higher limits were available, he requested $50,000/$100,000. No discussion about limits took place thereafter.

Mr. Logan averred that Farmers mailed notices to its insureds, advising them to contact their agents for a "friendly review" of their coverage. Kitchens never requested a review.

He stated that Mr. Kitchen did not come to him for all his insurance needs and he did not recall ever writing life, health, or homeowner's policies for Kitchens. He denied ever telling Mr. Kitchen he was an insurance adviser and he never held himself out to be one. He did not charge fees for insurance advice. In addition to selling insurance, Mr. Logan prepared tax returns and performed bookkeeping services. He had prepared the Kitchens' tax returns for 1987, 1988 and 1989.

Mrs. Kitchen submitted an affidavit in which she stated that after the accident she and her husband were surprised to learn their liability coverage was only $50,000 per person. They immediately raised their limits to $100,000 and later raised them to $250,000. She said that when she visited Mr. Logan's office after the accident, his secretary told her most of their insureds had at least $100,000/$300,000 coverage.[1] Mrs. Kitchen stated they had $100,000 liability insurance on their home. As an employee of their accountant, she said Mr. Logan also signed their 1977 corporate tax return.

The trial court granted summary judgment and Mr. Gates filed this timely appeal.

The legal issue presented is whether, absent special circumstances, an insurance agent owes an insured a duty to recommend automobile liability limits higher than those selected by the insured. If, as a matter of law, no general duty exists absent special circumstances, the remaining issue is whether, based on the facts viewed most favorably to the insured, special circumstances were present in this case.

## REVIEW STANDARD

A summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). All facts and inferences are considered in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972). On review of an order granting summary judgment, the appellate court engages in the same inquiry as the trial court. *Wilson*, at 437.

In a negligence action, a determination of whether a legal duty exists is initially a question of law for the court. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d

---

[1]Neither party objected to any statements made in the affidavits of Mr. Logan or Mrs. Kitchen on the basis of hearsay or the "deadman's statute", RCW 5.60-.030.

280 (1982); *Cox v. Malcolm*, 60 Wn. App. 894, 808 P.2d 758, *review denied*, 117 Wn.2d 1014 (1991).

## GENERAL DUTY

Both parties cite *Suter v. Virgil R. Lee & Son, Inc.*, 51 Wn. App. 524, 754 P.2d 155, *review denied*, 111 Wn.2d 1005 (1988). Quoting from *Jones v. Grewe*, 189 Cal. App. 3d 950, 956, 234 Cal. Rptr. 717, 720, *review denied* (May 14, 1987) and relying on cases in other jurisdictions, *Suter*, at 528, held: " '[t]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection . . .' ".

*Suter* acknowledged two situations wherein a special relationship between the agent and the client might create an exception to the general duty: (1) when the agent holds himself out as an insurance specialist and receives compensation for consultation and advice apart from the premiums paid by the insured and (2) when there is a longstanding relationship, some type of interaction on the question of coverage, coupled with the insured's reliance on the expertise of the insurance agent to the insured's detriment.

*Suter* agreed with the policy reasons for not expanding an agent's general duty set forth in *Jones*, at 956-57. Ordinarily the insured knows the extent of his personal assets and ability to pay increased premiums better than the insurance agent. *Suter*, at 528. Another policy reason is that it is unrealistic to expect an agent to advise an insured as to every possible insurance option, a logical requirement if there is a general duty to advise as to specific policy limits. *See Nelson v. Davidson*, 155 Wis. 2d 674, 456 N.W.2d 343 (1990).

■ Most jurisdictions continue to recognize the general duty and its limitations as adopted in *Suter. E.g., Sinex v. Wallis*, 611 A.2d 31, 32 (Del. Super. Ct. 1991); *Beauty Craft Supply & Equip. Co. v. State Farm Fire & Cas. Ins. Co.*, 479 N.W.2d 99, 100 (Minn. Ct. App. 1992); *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 576 (N.D. 1990); *Nelson*, 456 N.W.2d at 347. *See generally* 16A J. Appleman, *Insurance* § 8836, at 64-66

(1981) ("Ordinarily. . . an insurance agent assumes only those duties normally found in an agency relationship . . . and he assumes no duty to advise the insured merely by such relationship". (Footnote omitted.) 16A J. Appleman, at 64-65). *But see Dimeo v. Burns, Brooks & McNeil, Inc.*, 6 Conn. App. 241, 504 A.2d 557 (1986) (based on expert testimony produced in the case, an agent has a duty to explain the consequences of not having a sufficient amount of uninsured motorist coverage). As held in *Suter*, absent special circumstances, an insurance agent has no obligation to recommend automobile liability limits higher than those selected by the insured.

### SPECIAL CIRCUMSTANCES EXCEPTION

Mr. Gates contends a special relationship existed between Mr. Logan and Mr. Kitchen which arose because Mr. Logan prepared the Kitchens' individual and corporate tax returns and performed bookkeeping services. He therefore knew their net worth and what they had to lose if they had inadequate liability limits. He argues that the two special circumstances recognized in *Suter* should not be inclusive.

Mere knowledge of the insureds' annual income or notion as to their net worth does not constitute a "special circumstance" which imposes a duty on an insurance agent to advise as to increased policy limits. The amount of protection an insured wishes to obtain against any specific risk concerns the allocation of personal resources. It is a matter uniquely within the province of the insured. The facts do not bring this case within the scope of either *Suter* exception, and we find no sound policy basis for recognizing a third exception here.

We affirm.

SWEENEY, J.; and COOPER, J. Pro Tem., concur.

Review denied at 123 Wn.2d 1026 (1994).