[No. 12208-5-III.   Division Three.   February 22, 1994.]

EVELYN A. SHOWS, *Appellant*, v. MICHAEL PEMBERTON, ET AL, *Respondents*.

---

[3]In oral argument, Vera's attorney conceded that she adopted Mr. Rhay to reward him for service to her.

*William L. Reinig* and *Heidlebaugh, Reinig, Kirk & Barber*, for appellant.

*John G. Schultz* and *Leavy, Schultz & Davis, P.S.; William R. Hickman, Pamela A. Okano, Marilee C. Erickson*, and *Reed McClure*, for respondents.

THOMPSON, C.J. — Evelyn A. Shows appeals the summary judgment dismissal of her negligence and equitable estoppel claims against her insurer and insurance agent. She contends whether the insurer was estopped from denying coverage and whether the insurance agent had a duty to advise her that she had no underinsured motorist coverage while operating a public bus are jury questions. We affirm.

Ms. Shows was a Dial-A-Ride minibus driver for Ben Franklin Transit. On December 5, 1989, she was seriously injured when the minibus she was driving was struck by another vehicle. The driver of the other vehicle had liability insurance limits of $25,000 per person. Ben Franklin Transit was self-insured and had no underinsured motorist coverage on its drivers.

At the time of the accident, Ms. Shows owned a pickup truck insured by State Farm Mutual Automobile Insurance Company (State Farm). Although her policy provided underinsured motorist coverage, coverage was excluded if she was operating a vehicle for hire. Ms. Shows purchased her insurance from Michael Pemberton.

Ms. Shows received the $25,000 liability limits from the company which insured the other driver. She then made an underinsured motorist claim under her State Farm policy.

Her claim was denied and she commenced this action against the Pembertons and State Farm. She claimed Mr. Pemberton was negligent for allegedly not informing her she did not have underinsured motorist coverage while operating a public bus and for telling her she had "full coverage". She also claimed State Farm was equitably estopped from enforcing the policy exclusion. She sought $50,000 in damages, the per person underinsured motorist coverage she would have had if the exclusion had not applied.

## REVIEW STANDARD

■■ When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). All facts and inferences are considered in the light most favorable to the nonmoving party. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972).

A summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson*, at 437. The moving party bears the initial burden of showing the absence of an issue of fact. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If this showing is made, the burden shifts to the party with the burden of proof at trial — the plaintiff — to establish the existence of each essential element of its case. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 625, 818 P.2d 1056 (1991) (citing *Young*, at 225).

## EQUITABLE ESTOPPEL

■ Equitable estoppel arises when a person's statements or conduct are inconsistent with a claim afterward asserted and another has reasonably relied on the statements or conduct and would be injured by a contradiction or repudiation of them. *Robinson v. Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318, *cert. denied*, 121 L. Ed. 2d 598 (1992). The effect of equitable estoppel is to preclude a party from offering an explanation or defense that the party would otherwise be able to assert.

*Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121
Wn.2d 726, 735, 853 P.2d 913 (1993). Unless only one rea-
sonable inference can be drawn from the evidence, equita-
ble estoppel is an issue of fact. *Colonial Imports*, at 737.

Ms. Shows claims State Farm is equitably estopped from
denying her underinsured motorist coverage based on a
statement of "full coverage" allegedly made by Mr. Pember-
ton when she obtained a policy on her automobile in 1976,
or in 1983 when she replaced that vehicle and obtained a
new policy.[1] She cites *Saunders v. Lloyd's of London*, 113
Wn.2d 330, 779 P.2d 249 (1989) and *Buchanan v. Switzer-
land Gen. Ins. Co.*, 76 Wn.2d 100, 455 P.2d 344 (1969).

The general rule governing the application of equita-
ble estoppel to insurance policies was set forth in *Carew,
Shaw & Bernasconi, Inc. v. General Cas. Co. of Am.*, 189
Wash. 329, 336, 65 P.2d 689 (1937):

> The general rule is that, while an insurer may be estopped, by
> its conduct or its knowledge or by statute, from insisting upon
> a forfeiture of a policy, yet under no conditions can the cover-
> age or restrictions on the coverage be extended by the doctrine
> of waiver or estoppel.

The rationale underlying *Carew* is that an insurer should
not be required to pay for a loss for which it received no
premium. *Saunders*, at 336. In those situations where the
insured attempts to broaden coverage to protect against
risks not included in the policy or expressly disclaimed
therein, such rationale precludes estoppel. *Saunders*, at 336.

The general rule set forth in *Carew* does not preclude
coverage by estoppel in every instance where coverage is
denied by an insurer. *See, e.g., Safeco Ins. Co. of Am. v. Butler*,
118 Wn.2d 383, 823 P.2d 499 (1992) (general rule inapplicable
if insurer acts in bad faith in handling a claim); *Saunders* (an
insurer who accepts premium payments for period for which
no coverage is provided may be estopped from precluding

---

[1]In his brief, Ms. Shows' counsel refers to representations made by Mr. Pember-
ton that Ms. Shows was covered when driving anyone's vehicle "unless she stole it".
However, he fails to reference the record. The only instance of such statement we
find in the record is Ms. Shows' assertion that she "understood" that "full coverage"
meant coverage on anything she drove unless she stole it.

coverage); *Buchanan* (an adjuster's conduct in failing to file a proof-of-loss statement as he represented he would do could estop an insurer from denying coverage); *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.*, 15 Wn. App. 608, 550 P.2d 701 (1976) (an insurer who assumes the defense of an action without reserving rights may be estopped from denying coverage). In each case where estoppel arose, the insured justifiably relied on statements or conduct of the insurer or its agent subsequent to issuance of the policy and, but for estoppel, that policy would have been forfeited. There is no similarity to this case where the insured seeks to eliminate a restriction on coverage specifically set forth in the policy.

We find no basis for recognizing an exception to the general rule set forth in *Carew*. Ms. Shows denies she had any conversations with Mr. Pemberton about underinsured motorist coverage when she drove Ben Franklin Transit minibuses. The sole basis for her estoppel claim is that she inferred coverage from Mr. Pemberton's alleged statement of "full coverage" because he knew she drove minibuses for hire when the statement was made.[2]

■ Even if made, the alleged statement of "full coverage" does not establish the element of reasonable reliance required to prove equitable estoppel. *See State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 485, 687 P.2d 1139 (1984). Although not an estoppel case, the insured in *Emerson*, at 485, asserted the "reasonable expectation doctrine of insurance contracts" as it related to an agent's representation of "full coverage". *Emerson* stated at page 485:

> [The insured], in her affidavit in support of denial of summary judgment, says that State Farm's agent assured her she had full coverage. She concedes she read the policy prior to the accident. An assurance of full coverage cannot reasonably lead to the expectation of coverage without limit. A casual glance

---

[2]Ms. Shows also claims estoppel because she was a poor reader with limited formal education. However, she admitted during depositions that she was capable of reading and understanding the relevant exclusion in her policy. There can be no estoppel if the party claiming injury has knowledge of the true facts or a means of acquiring those facts. *PUD 1 v. WPPSS*, 104 Wn.2d 353, 365, 705 P.2d 1195, 713 P.2d 1109 (1985) (citing *Chemical Bank v. WPPSS*, 102 Wn.2d 874, 905, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065 *and* 471 U.S. 1075 (1985)).

through the pages of the policy should put a reader on notice that some exceptions to coverage were contained in the policy, and that the agent's assurances are qualified. Particularly in the absence of ambiguity, there is no reasonable expectation that no exemptions to coverage exist.

*Cf. American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 878-79, 854 P.2d 622 (1993) (statement of "full coverage" by broker not the kind of "extrinsic evidence" relevant in determining the meaning of an insurance contract); *Brow v. Mutual of Omaha Ins. Co.*, 80 Wn.2d 701, 497 P.2d 933 (1972) (representation of "full coverage" not enough to enable an insured to avoid exclusionary language).

█ *Emerson, Grice* and *Brow* support the contention by State Farm and Pembertons that, even if a statement of full coverage was made, it was unreasonable for Ms. Shows to assume she had underinsured motorist coverage when driving a minibus. Such statement did not create a material issue of fact as to reasonable reliance, an element of equitable estoppel. There can be no genuine issues of fact precluding summary judgment if there is a complete failure of proof concerning an essential element of the nonmoving party's case. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 625, 818 P.2d 1056 (1991). Therefore, the trial court did not err in granting a summary judgment dismissing Ms. Shows' equitable estoppel claim.

It is unnecessary to determine whether Ms. Shows made a factual showing as to detriment, another element of equitable estoppel. We note, however, she presented no evidence that underinsured motorist coverage was available while she was driving a minibus for hire.

### NEGLIGENCE

█ In a negligence action, a determination of whether a legal duty exists is initially a question of law for the court. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 653 P.2d 280 (1982); *Cox v. Malcolm*, 60 Wn. App. 894, 808 P.2d 758, *review denied*, 117 Wn.2d 1014 (1991).

As a general matter, an insurance agent assumes only those duties normally found in any agency relationship.

Those duties include the obligation to exercise good faith and carry out instructions. *See Hardt v. Brink*, 192 F. Supp. 879 (W.D. Wash. 1961) (applying Washington law); 16A John A. Appleman & Jean Appleman, *Insurance* § 8836, at 64 (1981). Whether the agent also assumes a duty to advise the insured regarding coverage merely by virtue of the agency relationship is a question addressed in *Gates v. Logan*, 71 Wn. App. 673, 862 P.2d 134 (1993).

■ *Gates* held that, absent special circumstances, an insurance agent has no duty to advise an insured to increase automobile liability limits. In so holding, *Gates* followed the rule adopted in *Suter v. Virgil R. Lee & Son, Inc.*, 51 Wn. App. 524, 754 P.2d 155, *review denied*, 111 Wn.2d 1005 (1988).

> "[T]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection . . ."[.]

*Suter*, at 528 (quoting *Jones v. Grewe*, 189 Cal. App. 3d 950, 956, 234 Cal. Rptr. 717, 720 (1987)).

Ms. Shows implies that an insurance agent has a duty to advise an insured of all exemptions in a policy. We disagree. Ms. Shows is correct in pointing out that the reason for the *Suter* holding — the insured knows the extent of his personal assets and ability to pay better than the agent — is not especially persuasive here. However, there are persuasive reasons for concluding that no duty to advise as to exemptions from coverage arose in this case. First, it is unrealistic to expect an agent to advise an insured as to every possible exemption contained in a policy. *See Nelson v. Davidson*, 155 Wis. 2d 674, 456 N.W.2d 343 (1990). Second, it is unreasonable to require an agent writing a personal automobile policy to inquire as to insurance coverage provided by the insured's employer in order to ascertain if there are "gaps" in coverage.

Ms. Shows argues that, even if Mr. Pemberton had no general duty to advise her she had no underinsured motorist coverage when she drove a vehicle for hire, he owed her such duty based on the "special relationship" she had with him. She relies on the fact that he was her insurance agent

for 7 years and knew she drove minibuses for Ben Franklin Transit. She also relies on the statement of "full coverage" he allegedly made.

█ As in *Suter, Gates* acknowledged that under special circumstances an insurance agent could have the duty to advise an insured as to the adequacy of insurance. Such increased duties can arise: (1) when the agent holds himself out as an insurance specialist and receives compensation for consultation and advice apart from the premiums paid by the insured and (2) when there is a longstanding relationship, some type of interaction on the question of coverage, coupled with the insured's reliance on the expertise of the insurance agent to the insured's detriment. *Suter*, at 528.

The evidence presented by Ms. Shows does not give rise to a triable issue of fact as to the existence of special circumstances. Mr. Pemberton knew Ms. Shows drove a minibus, but there is no evidence he knew her employer did not provide underinsured motorist coverage for her. He was not asked to ascertain if there were any gaps in coverage and, according to Ms. Shows, they never discussed underinsured motorist coverage at all. Although Mr. Pemberton served as her agent for 7 years, the relationship was limited to his writing her personal automobile policy. There is no evidence he supplied any of her other insurance needs, held himself out as a specialist, or received compensation for consultation and advice apart from premiums paid.

We affirm the trial court. However, because this appeal was not frivolous, we deny the attorney fee request of State Farm and Pembertons.

MUNSON, J., and VAN NUYS, J. Pro Tem., concur.

Review denied at 124 Wn.2d 1019 (1994).