[No. 28196-5-III.   Division Three.   October 14, 2010.]

RICHARD MCCLAMMY ET AL., *Appellants*, v. MICHAEL L. COLE ET AL., *Respondents*.

*Roger A. Felice*, for appellants.
*Timothy P. Cronin*, for respondents.

¶1 BROWN, J. — Richard and Mary Lou McClammy appeal the Klickitat County Superior Court order granting summary judgment dismissal of their fire-loss suit against

State Farm Fire and Casualty Company and their agent, Michael Cole (Mr. Cole). The McClammys contend the trial court erred in ruling the record failed to establish a special relationship existed with Mr. Cole that created a duty to advise them on the adequacy of their homeowner's policy coverage. We disagree and affirm.

## FACTS

¶2 In 1994, the McClammys purchased a house in Goldendale, Washington, purchasing a homeowner's policy from State Farm agent Robert Cole, Mr. Cole's father. In May 1995, the McClammys purchased a new house for $248,000, also purchasing a homeowner's policy through Robert Cole. In 1995, Robert Cole retired as a State Farm agent, and State Farm appointed Mr. Cole as the replacement agent.

¶3 When purchasing the 1995 homeowner's policy, Robert Cole provided the McClammys with three quotes, ranging from coverage of $190,000 to $225,000. The McClammys purchased the $200,000 replacement cost policy. The policy coverage increased with construction costs and inflation. Further, the McClammys purchased several automobile policies, a personal liability umbrella policy, and a business liability policy from State Farm through the Cole agency.

¶4 The McClammys unusually and frequently requested Mr. Cole and his staff provide them with breakdowns of the coverage and prices for their various policies. Anita Wilson, who worked for Mr. Cole, could not think of a client who asked more questions than Mr. McClammy.

¶5 After purchasing the second house, the McClammys made changes including replacing a pellet stove with a propane stove in 1995, installing skylights in 1999, replacing the roof in 2000, and adding a sunroom and remodeling the kitchen in 2000 or 2001. State Farm contractually required policyholders to advise their agent of any major improvements to their houses, but the McClammys did not notify Mr. Cole of these changes when they were made.

¶6 In May 2004, Mr. McClammy went to Mr. Cole's office to discuss an increase in his premium amounts. At that time, he told Mr. Cole about the remodeling and addition and suggested that Mr. Cole go to look at the improvements. Mr. McClammy did not feel comfortable about the amount of their coverage after making the improvements. In his deposition, Mr. Cole stated he did not think Mr. McClammy gave him any information regarding the improvements. Also, it was not his custom to go and inspect houses and State Farm did not require him to visit houses to make coverage changes or increases. Mr. Cole had visited the house in November 1999 for a reinspection pursuant to State Farm's reinspection program. He did not go inside the house.

¶7 After the meeting, Mr. Cole e-mailed Mr. McClammy with information Mr. McClammy had requested. The e-mail included information on their previous coverage rates and premiums, as well as the factors that go into the calculations of coverage. Mr. Cole also told them "Coverage A on current policy is $275,200, but may be reduce[d] to $240,200, and still stay within an estimated 100% to value." Clerk's Papers (CP) at 27. He based the e-mail on the current information he had from the McClammys.

¶8 In October 2004, Mr. McClammy went to Mr. Cole's office regarding a claim for water damage. He again told Mr. Cole about the changes to the house and wanted him to go out and evaluate it. Focusing on the water damage claim, Mr. Cole responded, "We can do that later." CP at 46. Mr. Cole, however, never told him he would come and reevaluate the house and its content. Mr. McClammy admitted he never asked Mr. Cole to increase the limits on the homeowner policy coverage. He did not ask Mr. Cole to come to the house again.

¶9 On April 5, 2005, a fire completely destroyed the McClammys' home. According to the statement of loss, the homeowner policy's total limit of liability on the building was $366,964.62. A contractor estimated the cost to rebuild a similar house would be $580,000.00, "which is well above the limit of insurance available." CP at 326.

¶10 On April 2, 2007, the McClammys sued State Farm and Mr. Cole, alleging Mr. Cole's 2004 representation that reassessment of the home was not necessary amounted to negligence. The McClammys further argued they had a right to rely on and did rely on Mr. Cole's representation.

¶11 Mr. Cole and State Farm moved for summary judgment, contending no special relationship existed between Mr. Cole and the McClammys and, therefore, he did not have a duty to advise them to increase their insurance policy limits. The trial court agreed, granting Mr. Cole and State Farm's motion for summary judgment. The McClammys appealed.

## ANALYSIS

¶12 The main issue is whether the trial court erred in granting summary judgment to Mr. Cole and State Farm and concluding the McClammys failed to establish the existence of a special relationship with Mr. Cole as a matter of law. Alternatively, the McClammys contend a material question of fact remains as to the existence of a special relationship that precludes summary judgment.

¶13 We review a summary judgment de novo, performing the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate only if a reasonable person could reach but one conclusion from the evidence presented. *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005). Once the moving party establishes that no dispute exists as to a material fact, the burden shifts to the nonmoving party to show the existence of such fact. *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321 (1998). "The nonmoving party must set forth specific facts that demonstrate a genuine issue of material fact and cannot rest on mere allegations." *Lipscomb v. Farmers Ins. Co. of Wash.*, 142 Wn. App. 20, 27, 174 P.3d 1182 (2009).

¶14 "In a negligence action, a determination of whether a legal duty exists is initially a question of law for

the court." *Gates v. Logan*, 71 Wn. App. 673, 676, 862 P.2d 134 (1993). Ordinarily, an insurance agent does not have a duty to advise the insureds as to the adequacy of their insurance policy coverage. *Sutter v. Virgil R. Lee & Son, Inc.*, 51 Wn. App. 524, 528, 754 P.2d 155 (1988). " '[T]he general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection.' " *Id.* (quoting *Jones v. Grewe*, 189 Cal. App. 3d 950, 956, 234 Cal. Rptr. 717 (1987)). But, where there is a special relationship between the agent and the insured, such duty may arise. *Gates*, 71 Wn. App. at 677; *Lipscomb*, 142 Wn. App. at 28. Absent this special relationship, "an insurance agent has no obligation to recommend . . . liability limits higher than those selected by the insured." *Gates*, 71 Wn. App. at 678.

¶15 "A special relationship exists if (1) the agent holds himself out as an insurance specialist and receives additional compensation for consulting and advice or (2) there is a long-standing relationship, some type of interaction on the question of coverage, and the insured relied on the agent's expertise to the insured's detriment." *Lipscomb*, 142 Wn. App. at 28. The second circumstance is disputed here.

¶16 Our record shows the McClammys and Mr. Cole had a long-standing relationship. And, the superior court found some sort of interaction existed on the question of coverage. It is, however, necessary to address whether a sufficient interaction occurred because "in cases where the insured never consulted with the agent about the adequacy of coverage and the agent never gave any advice, courts have held that no special relationship exists." *Id.* at 28-29. Here, no evidence shows such an interaction between the McClammys and Mr. Cole.

¶17 In *Sutter*, the Court of Appeals concluded there were "no facts showing any special relationship" in part because the insured "never consulted with anyone from [the] agency concerning the adequacy of their . . . liability coverage" and the "agency never gave [the insured] any advice in that regard." *Sutter*, 51 Wn. App. at 529. And in *Shows v.*

*Pemberton*, 73 Wn. App. 107, 115, 868 P.2d 164 (1994), the court held the insured presented no evidence giving "rise to a triable issue of fact as to the existence of special circumstances" where the insured did "not ask[ ] [the agent] to ascertain if there were any gaps in coverage and . . . they never discussed . . . coverage at all."

¶18 Similarly, in *Lipscomb*, the insured told the agent "he needed to know what his coverages were" and the agent told him "he 'was covered.' " *Lipscomb*, 142 Wn. App. at 29. The insured "did not request advice about whether he should increase his policy limits or otherwise change his coverage." *Id.* The court held, "[T]his single conversation . . . about his 'coverages' is hardly sufficient 'interaction on the question of coverage.' " *Id.* at 30. The court held the insured failed to show he relied on the agent's expertise to his detriment because the agent's " 'expertise' was limited to telling Lipscomb that he 'was covered,' " which was neither "misleading [n]or erroneous." *Id.* at 29.

¶19 The McClammys acknowledge the courts "appear more focused on whether recommendations were sought out by the insured and provided by the agency." Appellants' Br. at 25. They point to two interactions in support of their contention that the record supports a finding of a special relationship.

¶20 Referring to a May 2004 meeting with and e-mail from Mr. Cole, they contend their "reliance is clearly manifested when [Mr. McClammy] interacts and requests information from Cole the first time and is given an estimated cost of replacement figure which Cole believes reflects that the property is over-insured. That was reliance." Appellants' Br. at 42. Although Mr. McClammy told Mr. Cole they had made improvements and suggested or advised he go to their house to view these improvements, this does not establish that they discussed the adequacy of coverage or that Mr. Cole offered any advice on that subject.

¶21 Mr. Cole did, however, offer advice in the e-mail to the McClammys following this meeting. Mr. Cole stated that the McClammys current coverage "may be reduce[d] to

$240,200, and still stay within an estimated 100% to value." CP at 27. When viewing this statement in the context of the meeting and the e-mail, it is apparent that he offered this advice in response to Mr. McClammy's concerns about the large increase in premiums. At the meeting, Mr. McClammy and Mr. Cole had a "fairly lengthy discussion . . . relative to the premium amount, the increase in premium." CP at 43. Pursuant to a request from Mr. McClammy for information, Mr. Cole's e-mail informed the McClammys of their past and current coverage amounts and premiums, and explained the inflation factors which went into "the most recent larger increase in coverage." CP at 27. One cannot conclude from this e-mail that Mr. McClammy requested any advice on the adequacy of coverage, or that the two even discussed coverage.

¶22 The second interaction occurred in October 2004 when Mr. McClammy went to Mr. Cole's office to discuss coverage for water damage. Mr. McClammy again asked Mr. Cole to view the improvements. This likely amounted to consulting with Mr. Cole about the adequacy of coverage. But, Mr. Cole's response, "We can do that later," after completing the water-damage claim does not amount to advice on the adequacy of coverage. CP at 46. In fact, it does not amount to advice of any kind and is certainly not expertise that the McClammys could rely on.

¶23 The McClammys next challenge the court's finding that Mr. Cole did not possess sufficient expertise and the court's finding regarding reliance.[1] Because no evidence shows both a consultation on the adequacy of coverage *and* advice from Mr. Cole in either of these separate interactions, addressing these issues is unnecessary. No evidence suggests the McClammys and Mr. Cole had a sufficient interaction about coverage. Thus, the McClammys fail to show the presence of a genuine fact issue regarding a special relationship.

---

[1] The McClammys discuss justifiable reliance in their reply brief. Appellants' Reply Br. at 6-8. Such arguments may have been applicable had the merits of their negligence claim been addressed, but whether reliance is justified is not a part of the special relationship determination.

¶24 The McClammys lastly contend State Farm's marketing tools and programs "Promoted The Establishment And Enhancement Of Special Relationships Between Agents And Clients." Appellants' Br. at 45. But a "special relationship" is determined case by case, based on the specific interactions and relationships of the insured and the agent, not generalized marketing tools and programs. The McClammys do not offer any argument to extend current special relationship law, and we decline to do so.

¶25 Given all, the superior court did not err when granting summary judgment to Mr. Cole and State Farm.

¶26 Affirmed.

KULIK, C.J., and KORSMO, J., concur.