**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SMS SERVICES LLC, a Virginia limited liability company, | No. 12-35249 |
| Plaintiff - Appellant, | D.C. No. 2:11-cv-00336-MJP |
| v. | MEMORANDUM[*] |
| HUB INTERNATIONAL NORTHWEST, LLC, a Washington limited liability company, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted August 28, 2013
Seattle, Washington

Before: HAWKINS, McKEOWN, and CLIFTON, Circuit Judges.

In this action for professional negligence and malpractice, SMS Services LLC

("SMS") appeals the summary judgment grant in favor of its aviation insurance

broker, HUB International Northwest, LLC ("HUB"). The district court concluded

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

HUB did not owe a duty to SMS to advise it about the amount of insurance required under certain leases to which SMS was a party. We affirm.

The district court did not err by applying the "special relationship" test to HUB. Although a broker represents the insured while an agent represents the insurance company, both are insurance intermediaries paid by commission from insurance premiums, and no Washington cases have distinguished between the two in terms of general agency duties. *See, e.g.*, *AAS-DMP Mgmt., L.P. v. Acordia Nw. Inc.*, 63 P.3d 860, 863 (Wash. Ct. App. 2003). Nor did the district court err in determining that SMS could not demonstrate the requisite special relationship with HUB. Even if HUB held itself out as an insurance specialist, it did not receive compensation for giving consultation and advice "apart from" the commission on the insurance premiums. *See Suter v. Virgil R. Lee & Son, Inc.*, 754 P.2d 155, 157 (Wash. Ct. App. 1988).

Moreover, SMS and HUB did not have a "longstanding relationship." *See id.* NII Holdings, Inc. ("NII") had acted as SMS's agent for only one year and procured only one prior policy for SMS through HUB at the time of the renewal. Even if we were to impute to SMS the benefit of NII's pre-existing relationship with HUB, SMS cannot show it specifically interacted with HUB on the question of the required amount of coverage under the leases or that it relied on HUB's advice to its detriment

2

regarding those requirements. *See Lipscomb v. Farmers Ins. Co.*, 174 P.3d 1182, 1186-87 (Wash. Ct. App. 2008).

While a  broker or agent's duty may also be expanded by "a specific promise by an agent as part of the agency relationship," it extends only to the additional task to which the agent specifically agreed. *Peterson v. Big Bend Ins. Agency, Inc.*, 202 P.3d 372, 377-78 (Wash. Ct. App. 2009). Here, HUB agreed in its service plan with NII to "[r]eview contracts to assure adequacy of coverage in relation to exposures and contract requirements, as needed."

Looking at the document as a whole, including the numerous similar provisions in which HUB indicates services it would be willing to perform *if* called upon to do so, the only reasonable construction of this language is that HUB did not promise to automatically review any and all contracts for the insured, but only when the client identifies such a need for review and advice. For example, "contracts" is undefined; only *the insured* could know which contracts it might have entered into which could potentially impact insurance coverage and only *the insured* would be in possession of such documents.

Indeed, in this case, HUB did not even possess relevant portions of the documents SMS now contends the broker should have reviewed. In addition, to construe the provision otherwise would render the clause "as needed" superfluous,

3

because there would be no way for HUB to determine if review was "needed" without performing the very task it offered to perform—reviewing the contracts. The district court correctly concluded that HUB did not affirmatively agree to expand its duties to review third-party contracts without some prompt by the client.

Finally, SMS was a party to and had access to the very agreements that required the higher coverage amount. Nonetheless, SMS chose the lower coverage.

**AFFIRMED.**