[No. B012541. Second Dist., Div. Three. Feb. 24, 1987.]

LEONARD P. JONES et al., Cross-complainants and Appellants, v. CARL F. GREWE et al., Cross-defendants and Respondents.

COUNSEL

Girardi, Keese & Crane and James B. Kropff for Cross-complainants and Appellants.

Stockdale, Peckham & Werner and Richard W. McLain for Cross-defendants and Respondents.

OPINION

**KENNARD, J.*—**Cross-complainants Leonard and Mary Jones (appellants) appeal from an order of dismissal entered after the trial court sustained a demurrer of cross-defendants Carl F. Grewe, Grewe Agency, and Stelling and Grewe Insurance (respondents) to appellants' third amended cross-complaint. Affirmed.

---

*Assigned by the Chairperson of the Judicial Council.

## BACKGROUND

On September 28, 1979, Linda Leriget, a minor, sustained serious injuries when she fell into the swimming pool of an apartment building in which her parents were tenants and which was owned by appellants. The Lerigets brought an action against appellants for negligence. Under a stipulated judgment entered on August 6, 1982, appellants agreed to settle the case for $1.5 million. The Lerigets agreed not to record, enter, or execute on the $1.5 million judgment provided appellants would (1) pay the Lerigets a total of $200,000, and (2) transfer to the Lerigets any legal rights appellants had against respondents, who were the insurance brokers who had sold appellants $300,000 in liability insurance for the apartment building in question.

Appellants filed a cross-complaint against respondents. In a cause of action for negligence, appellants' third amended cross-complaint alleged that respondents had a fiduciary duty towards appellants, and that respondents breached that duty when they failed to provide appellants with liability insurance sufficient to protect their personal assets and satisfy the $1.5 million judgment entered against them in August 1982. The complaint also alleged that respondents held themselves out as insurance consultants and experts; that respondents had taken care of appellants' insurance needs for 10 years, during which time appellants relied on respondents' expertise; and that respondents "expressly and impliedly" represented to appellants that their insurance protection was adequate. The complaint further alleged that on November 28, 1977, appellants bought a liability insurance policy through respondents covering appellants' apartment building for an amount up to $300,000. The policy was in effect on September 28, 1979, the date on which the young child of tenants in appellants' apartment building fell into the swimming pool.

Respondents demurred, arguing that they did not have a duty to provide appellants with liability insurance sufficient to "cover every conceivable eventuality," and therefore the complaint had failed to state a cause of action for negligence. The trial court agreed, and sustained the demurrer to the third amended cross complaint without leave to amend. This appeal by appellants followed.

## ISSUE

In a case of first impression we are asked to decide whether respondents owed appellants a legal duty of care to provide them with a policy of liability insurance sufficient to protect their personal assets and to satisfy any judgment against appellants arising out of the latter's negligent acts.

## DISCUSSION

■ Because this appeal arises from a judgment entered after the sustaining of a demurrer, we must assume the truth of all properly pleaded material allegations of the complaint in evaluating the propriety of the trial court's action. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330]; *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 278 [176 Cal.Rptr. 809].) ■ A pleading must allege facts and not mere conclusions. (*Vilardo* v. *County of Sacramento* (1942) 54 Cal.App.2d 413, 418 [129 P.2d 165].) ■ "The function of a demurrer is to test the legal sufficiency of the challenged pleading by raising questions of law." (*Baldwin* v. *Zoradi, supra,* 123 Cal.App.3d at p. 278.)

■ A complaint in an action for negligence must allege (1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading § 527, p. 558.) A complaint which lacks facts to show that a duty of care was owed is fatally defective. (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 820 [131 Cal.Rptr. 854].)

■ Whether a duty of care exists is a question of law for the court. (*Wilson* v. *All Service Ins. Corp.* (1979) 91 Cal.App.3d 793, 796 [153 Cal.Rptr. 121]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8-9 [31 Cal.Rptr. 847].) Also, whether, and the extent to which, a new duty is recognized is ultimately a question of public policy. (*Raymond* v. *Paradise Unified School Dist., supra.*)

■ Ordinarily, an insurance agent assumes only those duties normally found in any agency relationship. This includes the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured. (3 Couch on Insurance (2d ed. 1984) Duties and Liabilities of Agent, § 25:37, p. 336.) The mere existence of such a relationship imposes no duty on the agent to advise the insured on specific insurance matters. (*Sandbulte* v. *Farm Bureau Mut . Ins. Co.* (Iowa 1984) 343 N.W.2d 457, 464; 16A Appleman, Insurance Law and Practice, § 8836, pp. 64-66.) "An agent may point out to [the insured] the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to respond." (*Hill* v. *Grandey* (1974) 132 Vt. 460 [321 A.2d 28, 34].)

■ An agent may, however, assume additional duties by an express agreement or a holding out. (*Sandbulte* v. *Farm Bureau Mut. Ins. Co., supra,* 343 N.W.2d 457, 464; 16A Appleman, Insurance Law and Practice, *supra,*

§ 8836, pp. 65-66.) Accordingly, the agent may be liable to the insured for losses which resulted as a breach of that special duty. (*Sandbulte* v. *Farm Bureau Mut. Ins. Co., supra,* at pp. 464-465; 16A Appleman, Insurance Law and Practice, *supra,* § 8836, pp. 64-66.) The insured may sue for breach of the agreement, or he may sue in tort for negligent breach of the duty imposed by the agreement. (*Haurat* v. *Superior Court* (1966) 241 Cal.App.2d 330, 334 [50 Cal.Rptr. 520]; Annot., 72 A.L.R.3d 747.)

In arguing that appellants breached their duty in not providing respondents with adequate liability coverage, respondents rely on *Greenfield* v. *Insurance Inc.* (1971) 19 Cal.App.3d 803 [97 Cal.Rptr. 164] and *Westrick* v. *State Farm Insurance* (1982) 137 Cal.App.3d 685 [187 Cal.Rptr. 214]. Such reliance is misplaced. Neither case stands for the proposition that an insurance agent or broker has a duty to obtain liability coverage for an insured in an amount sufficient to satisfy any judgment arising out of an action for negligence brought against the insured by a third party.

*Greenfield* involved the negligent failure of an agent to obtain the coverage requested by his client. In the case before us, appellants sought liability insurance, and respondents did procure such coverage.

In *Westrick,* the insurance agent negligently failed to inform the insured that a welding truck which the insured sought to insure and which was later involved in an accident was not covered by the insured's existing policy. Unlike the situation in *Westrick,* the present case does not involve a failure by respondents to explain any exclusions in the policy.

Both *Greenfield* and *Westrick* involved a breach of the general duty owed by the agent to the insured. In *Greenfield* the court observed that an insurer has a duty to exercise reasonable care in seeking coverage as requested by the insured, and violates that duty by not obtaining the coverage. (19 Cal.App.3d at p. 811.) In *Westrick,* based on the insured's prior inquiries regarding coverage of a welding truck under his existing policy and the agent's superior knowledge of the scope of an automatic coverage clause under the policy, the court held the agent had a duty to explain the limiting provisions to the insured. (137 Cal.App.3d at p. 692.) ▪ *Westrick*'s holding reiterates what California courts have recognized for some time, namely, that it is an insurer's duty to inform the insured of his rights and obligations under the policy, particularly when an insured's apparent lack of knowledge may result in a loss of benefits or a forfeiture of rights. (See, e.g., *Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418, 428 [158 Cal.Rptr. 828, 600 P.2d 1060]; *Walker* v. *Occidental Life Ins. Co.* (1967) 67 Cal.2d 518, 523-524 [63 Cal.Rptr. 45, 432 P.2d 741]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 125 [331 P.2d 742].) This

obligation is included in the implied duty of good faith and fair dealing which an insurer owes its insured. (*Davis* v. *Blue Cross of Northern California, supra,* 25 Cal.3d at pp. 427-428.)

The general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection, as appellants seek to impose here.

■ The issue we must resolve is whether the complaint has alleged facts from which a special or greater duty could reasonably be inferred. The complaint did not allege the existence of an express agreement creating a broader agency relationship in which respondents were to advise, suggest and procure for appellants liability insurance in an amount sufficient to protect appellants' personal assets and satisfy any judgment against appellants arising out of the latter's negligent acts.

The mere allegation in a complaint, as in this case, that an insured has purchased insurance from an insurance agent for several years and followed his advice on certain insurance matters is insufficient to imply the existence of a greater duty. Such reliance is not at all uncommon when an insured has done business with an insurance agency over a period of time. (*Sandbulte* v. *Farm Bureau Mut. Ins. Co., supra,* 343 N.W.2d 457, 465; *Collegiate Mfg. Co.* v. *McDowell's Agency, Inc.* (Iowa 1972) 200 N.W.2d 854, 856, 858.) Nor can the existence of a broader agency relationship warranting the imposition of a greater duty be reasonably inferred from the complaint's allegation that respondents had assured appellants of the adequacy of their liability coverage. As the court noted in *Sandbulte* v. *Farm Bureau Mut. Ins. Co., supra,* 343 N.W.2d 457, an insured's request for "sufficient coverage" and an agent's assurance that the policy provided "adequate" coverage do not, in and by themselves, imply an "expanded principal-agent relationship." Such an exchange usually occurs within the context of the general principal-agent relationship. "Purchasers of insurance generally seek 'sufficient coverage.' " (*Id.* at p. 465.) To imply the existence of a broader agency agreement from such an exchange, the *Sandbulte* court said, would in effect make the agent "a blanket insurer for his principal." (*Ibid.*)

An insurance policy arises out of the insured's desire to be protected in a particular manner against a specific kind of obligation. It is the insured's responsibility to advise the agent of the insurance he wants, including the limits of the policy to be issued. (*Manzer* v. *Pentico* (1981) 209 Neb. 364 [307 N.W.2d 812, 813]; *Hill* v. *Grandey, supra,* 321 A.2d 28, 34.) Ordinarily, the person seeking liability insurance knows better than the insurance agent the extent of his personal assets, and the premium he can afford or is willing to pay. Here, the complaint did not allege that respondents knew the extent

of appellants' personal assets. All we have is a vague and conclusionary allegation that "financial information" regarding appellants was made available to respondents. No facts were alleged from which it could be reasonably inferred that such information accurately reflected the extent of appellants' personal assets, and that respondents failed to consider the information in procuring a liability insurance policy with a $300,000 limit. Also, the complaint did not allege that liability coverage for $1.5 million (the amount of the judgment in the underlying negligence action) was available for the property in question, and if so, whether appellants would have been willing to pay the premium therefor. Nor did the complaint allege that appellants had delegated to respondents the burden of determining liability coverage in an amount which would have afforded appellants complete protection from any judgment arising out of a negligence action brought against appellants by a third party. Absent such allegations, appellants retained the responsibility of deciding how much liability insurance to carry and how much premium to pay.

## CONCLUSION

We conclude that appellants' third amended cross-complaint has not alleged facts from which it could reasonably be inferred that respondents were under a duty to procure complete liability protection for appellants. To hold otherwise would, on the vague and conclusionary allegations contained in the complaint, drastically and unilaterally expand the principal-agent relationship. (See *Sandbulte* v. *Farm Bureau Mut. Ins. Co., supra,* 343 N.W.2d 457, 465; *Collegiate Mfg. Co.* v. *McDowell's Agency, Inc., supra,* 200 N.W.2d 854, 858.) Neither an insurance agent nor anyone else has the ability to accurately forecast the upper limit of any damage award in a negligence action against the insured by a third party. To impose such a duty based on the pleadings in this case would in effect make the agent a blanket insurer for his principal. We fail to see where sound public policy would require the imposition of such a duty upon the agent, unless the latter has by an express agreement or a holding out undertaken that obligation.

Accordingly, we find that appellants' third amended cross-complaint has failed to state a cause of action for negligence, and the trial court therefore properly sustained respondents' demurrer to the cross-complaint.

## DISPOSITION

The judgment (order of dismissal) is affirmed.

Arabian, J., concurred.

**LUI, Acting P. J.**—I respectfully dissent.

The majority is correct when it states that the general duty of reasonable care owed by insurance agents to their clients does not include the obligation to procure a policy affording complete liability protection.[1] I also agree with the majority that the existence of a duty of care is a question of law that is based on considerations of public policy. (*Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 8-9 [31 Cal.Rptr. 847].) "An affirmative declaration of duty simply amounts to a statement that two parties stand in such relationship that the law will impose on one a responsibility for the exercise of care toward the other." (*Ibid.*)

I differ with the majority, however, as I conclude that the particular allegations of this cross-complaint state facts from which a special or greater duty could reasonably be inferred.

The third amended cross-complaint alleged that appellants and respondents had a 10-year relationship wherein respondents encouraged appellants to depend and rely upon their advice, service and expertise regarding the holding of their insurance needs and protection, and appellants did so rely. Respondents, who represented themselves to appellants as "financial planners, insurance professionals and as specialists in the area of evaluating their clients' insurance needs and protection and procuring appropriate liability insurance," knew of appellants' assets and wealth and throughout the period of their relationship expressly and impliedly represented to appellants that

---

[1] I agree with the majority that neither *Westrick* v. *State Farm Ins.* (1982) 137 Cal.App.3d 685 [187 Cal.Rptr. 214], nor *Greenfield* v. *Insurance Inc.* (1971) 19 Cal.App.3d 803 [97 Cal.Rptr. 164], imposes a duty to obtain coverage that will protect an insured's personal assets. However, they are both instructive as to duty.

The court in *Westrick, supra,* in an appeal from a directed verdict, emphasized the disparity of knowledge between insureds and insurance agents. The court found that an agent who previously told the insured a commercial jeep pick-up truck would be covered for 30 days under his current policy could be liable though he had not expressly promised to assume responsibility to procure the insurance for a new commercial vehicle when his co-agent and father, when asked about general coverage, did not inform the insured that a new six-wheel vehicle was excluded from the policy's automatic 30-day coverage.

In *Greenfield, supra,* 19 Cal.App.3d 803, the insurance agent obtained a policy for business interruption that excluded loss caused by mechanical breakdown, the specific type of coverage requested by the insured, and represented that the requested coverage had been obtained. (*Id.,* at p. 810.) Judgments of negligence and fraud were affirmed. The court found a duty "to exercise reasonable care in seeking coverage as requested. . . ." (*Ibid.*)

Our Supreme Court in *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d. 800 [180 Cal.Rptr. 628, 640 P.2d 764], upheld the liability of a broker who obtained a replacement policy with a $100,000 policy limit, thereby leaving a $200,000 gap in coverage and not complying with the excess policy's requirement that the insured maintain underlying coverage of $300,000. The situation in *Reserve* is close to the case at bench since primary insurance was actually obtained by the broker, but in an inadequate amount.

their insurance protection was adequate and that their insurance needs were taken care of. It was further alleged that respondents "indicated and represented to [appellants] that the amount of insurance provided was sufficient to cover [any] claim which might be [brought] against [appellants]" although respondents either knew or should have known that such a limited amount of liability coverage as the $300,000 involved herein "could not adequately protect [appellants] against [reasonable] and foreseeable loss in light of nature of the property insured, the risks involved and the extent of [appellants'] wealth, income and financial worth."

Respondents represented themselves to be experts at procuring appropriate liability insurance and encouraged appellants to depend and rely on their advice, service, and expertise; they also expressly and impliedly represented that the insurance protection obtained by them was "adequate."

The court in *Sandbulte* v. *Farm Bureau Mut. Ins. Co.* (Iowa 1984) 343 N.W.2d 457, 465, relied upon by the majority, decided that summary judgment was appropriate where the facts most favorable to the insured showed he had purchased insurance from defendants "for several years" and asked for and was assured he had "sufficient coverage." The court declined to find this was an expanded agency agreement but noted situations where a special duty might arise, for example, when "there is a long-established relationship of entrustment between insurance counselor or agent and client from which it clearly appears that the counselor appreciated that there was a duty to take the initiative in giving comprehensive advice to [the] client on insurance matters. . . ." (*Id.* at p. 464.) The *Sandbulte* court, *supra*, 343 N.W.2d at pages 464-465, further quoted 16A Appleman, Insurance Law and Practice (1981) section 8836, at pages 64-66 as follows: "Ordinarily, of course, an insurance agent assumes only duties normally found in an agency relationship . . . and he assumes no duty to advise the insured merely .by such relationship. However, where an agent holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particularly where such needs have been brought to the agent's attention. And in so doing, he may be held to a higher standard of care than that required of the ordinary agent since he is acting as a specialist. Accordingly, the agent may be liable to an insured for the damage suffered by his failing to inform him as to a potential source of loss and by his failing to recommend insurance therefor."

In essence, the cross-complaint herein alleges that appellants reposed trust and confidence in respondents to obtain their announced goal of adequate and sufficient insurance protection and that respondents (who held themselves out as specialists in the area) in turn represented to appellants, following a 10-year relationship between the parties, that the insurance

protection was adequate and that appellants' insurance needs were taken care of. If appellants can prove what they have alleged,[2] they can establish a duty and a cause of action.

Insurance brokers do not need to represent that coverage will be adequate in all circumstances; they can be candid with their clients about the uncertainty of how much insurance is sufficient coverage. They can inform clients as to judgments that have been rendered imposing liability and indicate that future judgments may require even greater coverage. They can tell the clients that each person must decide, given their own circumstances, what amount of coverage is "adequate" and how much they can afford to purchase. They do not need to hold themselves out as experts in the area of evaluating insurance needs and in procuring adequate liability insurance. None of those routes was taken by respondents, at least according to the allegations of the cross-complaint. Rather, respondents "expressly and impliedly represented ... that their insurance protection was adequate and that the [appellants'] insurance needs were taken care of." Appellants, as clients relying on the expertise of respondents, a reliance encouraged by respondents, should be able to assume respondents were exercising due care for their clients' benefits in making their representations.

I find that, liberally construing the pleadings and drawing all reasonable inferences that can be drawn therefrom, the third amended cross-complaint does state a cause of action. Therefore, I would reverse the order of dismissal and remand the matter to the trial court for further proceedings.

A petition for a rehearing was denied March 17, 1987, and appellants' petition for review by the Supreme Court was denied May 14, 1987. Mosk, J., and Arguelles, J., were of the opinion that the petition should be granted.

---

[2]"In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we must treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. [Citations.] We must liberally construe the allegations of the complaint with a view to attaining substantial justice among the parties. ... It is error to sustain a demurrer where a plaintiff [or cross-complainant] has stated a cause of action under any possible legal theory. [Citations.]" (*Service Employees International Union* v. *Hollywood Park, Inc.* (1983) 149 Cal.App.3d 745, 757 [197 Cal.Rptr. 316].) As our Supreme Court stated in *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865], "even if we were to entertain doubts that plaintiff could factually support his allegations at trial we are nevertheless obliged to give them deference for purposes of this review."