David MEISEL, Plaintiff,

v.

ALLSTATE INDEMNITY CO., Thomas J. Anderson, & Does 1–50, Defendants.

No. CV–F–04–6503 REC LJO.

United States District Court, E.D. California.

Feb. 16, 2005.

Hadi Ty Kharazi, Fresno, CA, for Plaintiff.

Gregory Michael MacGregor, Ervin, Cohen and Jessup, Beverly Hills, CA, for Defendants.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIMS AS TO DEFENDANT ANDERSON AND DENYING PLAINTIFF'S MOTION TO REMAND. (Docs. 7, 13)

COYLE, District Judge.

On January 10, 2005, the Court heard Defendant Allstate Indemnity Co.'s motion to dismiss and Plaintiff David Meisel's motion to remand. Upon due consideration of the written and oral arguments of the parties and the record herein, the Court grants Allstate's motion to dismiss the claims against Defendant Thomas J. Anderson and denies Plaintiff's motion to remand the case to state court.

## I. Factual Background

Plaintiff had a homeowner's insurance policy through Allstate. The policy provided coverage for, among other things, losses to structure and content and temporary living expenses. The limits on the policy were as follows: house structure, $220,000; contents, $145,000; and living expenses, $50,000.

On September 14, 2003, Plaintiff's house burned down due to a faulty drop line to the house from the transformer provided by the public utility company. Plaintiff reported the loss to Allstate through Anderson, Plaintiff's insurance agent. Allstate referred the structure portion of the loss to Tom Reed, who informed Plaintiff that he had full replacement value on his house.

Plaintiff sought bids for the reconstruction of the house and obtained a bid for $390,000 from an Allstate recommended contractor. Plaintiff presented it to Reed for approval. Reed informed Plaintiff at that time that Plaintiff's policy limit was $320,000 and recommended Plaintiff get another bid. Plaintiff obtained a bid from a second recommended contractor, Randrup, for $380,000 and submitted it to Reed.

Reed contacted Randrup and represented that Plaintiff had a policy limit of $320,000. After negotiations between Reed and Randrup, the bid was revised to $354,000. This did not include landscaping, siding, window upgrades or other essentials.

Reed told Plaintiff that he could consolidate the structure limitation of $320,000 and the contents limitation of $145,000 in order to complete the reconstruction. Reed made the same representations to Randrup, and a contract for the reconstruction of Plaintiff's home was drafted based on this representation. Plaintiff signed a contract with Randrup for the reconstruction on December 31, 2003, and Randrup began work shortly thereafter.

In approximately March 2004, when the house was partially reconstructed with foundation, framing, roofing, electrical and plumbing having been completed, Plaintiff was informed by Reed that Plaintiff's structure policy limit was $220,000 rather than $320,000. Allstate also informed Plaintiff that it was going to withhold substantial sums relating to depreciation costs on the contents policy unless Plaintiff used all of the content monies to replace lost contents.

Plaintiff alleges that he was locked into the contract with Randrup and had no choice but to complete the reconstruction of the house. Plaintiff further alleges that the misrepresentations of Allstate and its employees prevented him from mitigating his losses by contracting for a less expensive reconstruction.

Construction has come to a halt on the new home. Allstate has demanded that Plaintiff move out of the temporary home and has refused to pay the policy limits for temporary living expenses. On August 1, 2004, Allstate notified Plaintiff that it would no longer pay temporary living expenses, stating that it has discharged its obligation under the policy because it has paid out the full reconstruction policy limit.

## II. Procedural History

Plaintiff filed his Complaint in Fresno County Superior Court on September 13, 2004. The Complaint contains four causes of action. Counts one and two are against Anderson solely. Count one is for breach of contract. Plaintiff alleges that the policy required Anderson to review and evaluate Plaintiff's insurance needs on an annual basis and that Anderson breached this contract by not upgrading the policy. Count two is for negligence. Plaintiff alleges that Anderson was negligent in failing to "discharge his due care in updating the policy to meet the market standards."

Counts three and four are against Allstate solely. Count three alleges that Allstate breached the implied covenant of good faith and fair dealing by making misrepresentations regarding how Plaintiff could apply the monies from the contents policy and by failing to pay Plaintiff's temporary living expenses. Count four alleges that Allstate negligently misrepresented to Plaintiff that the structure policy limit was $100,000 more than the actual value and that Plaintiff could use monies from the contents policy toward reconstruction costs. Plaintiff asserts that but for these misrepresentations he would have chosen either not to rebuild or to rebuilt a smaller or different type of home.

Plaintiff seeks general and special damages, punitive damages against Allstate and attorney fees according to the contract as well as interest and costs.

Allstate filed a timely notice of removal based on diversity jurisdiction.

## III. The Present Motions

Allstate filed a motion to dismiss the claims against Anderson, alleging that Anderson, who, like Plaintiff, is a citizen of California, was fraudulently joined in order to defeat diversity jurisdiction. Allstate

argues that the claims against Anderson should be dismissed as a sham, that diversity exists, and that removal was proper.

Plaintiff filed a motion to remand the case to state court in response to Allstate's motion. Plaintiff argues that the claims against Anderson are proper and that, because diversity is lacking, this Court lacks subject matter jurisdiction.

## IV. Discussion

### A. Legal Standard

■ Federal courts are courts of limited jurisdiction and there is a strong presumption against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Removal of a case to federal court is proper if the case could have originally been heard in federal court because it had subject matter jurisdiction based on diversity or the existence of a federal question. 28 U.S.C. § 1441(a). Any doubts regarding removal fall in favor of remand. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The burden is on the defendant to show that removal is proper. *Gaus*, 980 F.2d at 566.

Under 28 U.S.C. § 1332, diversity exists if the amount in controversy exceeds $75,000 exclusive of interest and costs and there is complete diversity of citizenship between the plaintiff and all defendants.

■ Generally, diversity must exist both when a case is originally filed and at the time of the removal. An exception to this rule is fraudulent joinder. A nondiverse party may be disregarded if the court determines that no possible cause of action has been stated against the party. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir.1998).

### B. Amount in Controversy

Plaintiff's Complaint does not specifically allege the amount in controversy. "The amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action." Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The Rutter Group) § 2:441 (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347–348, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). In determining the amount in controversy, a court may consider compensatory and punitive damages as well as attorney fees, but may not consider interest and costs of suit. *Id.* at §§ 2:442–447.

■ Here, Plaintiff seeks general, special and punitive damages as well as attorney fees, all of which may be considered in determining the amount in controversy. The Complaint alleges that while Plaintiff's structural policy limit was only $220,000, Plaintiff, believing he would be covered, entered into a contract for $353,000. This is a difference of over $100,000 and is sufficient to satisfy the jurisdictional amount.

### C. Diversity of Citizenship—Allstate & Doe Defendants

For purposes of diversity, a corporation is considered a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Allstate is incorporated under the laws of the State of Illinois. Allstate asserts that, applying the nerve center test, its principal place of business is in Illinois.[1] Plaintiff

---

1. Under Ninth Circuit law, the nerve center test applies when "no state contains a substantial predominance of [a] corporation's business activities." *Industrial Tectonics, Inc.*

*v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990). Allstate conducts operations throughout the United States and is licensed in 50 states; no one state contains a substantial

does not dispute this. Accordingly, diversity exists between Plaintiff, a citizen of California, and Allstate, a citizen of Illinois.

The removal statute specifically provides that, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a). The presence of Does 1 through 50 in Plaintiff's Complaint does not defeat diversity jurisdiction.

### D. Diversity of Citizenship—Defendant Anderson—Fraudulent Joinder

Allstate argues that Anderson, a citizen of California, was improperly named as a defendant solely to defeat diversity jurisdiction. Allstate argues that because Anderson was its agent Plaintiff cannot state a claim against Anderson under well settled law and thus his citizenship is disregarded for purposes of removal.

Plaintiff argues that at the time the policy in question was purchased, Anderson was no longer an employee of Allstate and owed a duty to Plaintiff.

■ A fraudulently joined defendant will not defeat removal based on diversity. *Ritchey*, 139 F.3d at 1318. "Fraudulent Joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987).

■ Normally a court will look only to the pleadings to determine whether a plaintiff has stated a cause of action against a defendant. In the case of fraudulent joinder, however, "[t]he defendant seeking removal to the federal court is

entitled to present the facts showing the joinder is fraudulent." *Id.* A court may thus consider facts outside the complaint to decide the issue. *Ritchey*, 139 F.3d at 1318.

Simply put, the question here is whether there is any possibility that Plaintiff will be able to establish liability against Anderson. Allstate argues no, because Anderson was at all times an agent of Allstate and cannot be sued separately under California law. Plaintiff argues yes, because Anderson was not a salaried employee of Allstate when the policy at issue was purchased.

### 1. Breach of Contract

■ Plaintiff's first cause of action for breach of contract alleges that the "policy of insurance sold by Anderson to Plaintiff required Anderson to review and evaluate the needs of Meisel on an annual basis. Anderson failed to discharge this duty by not upgrading the policy on its annual reviews. Defendant has not performed this part of the contract, and therefore has breached the contract." Compl. at ¶ 37.

■ Plaintiff's claim for breach of contract against Anderson fails as a matter of law. "Under California law an insurance agent cannot be held liable for breach of contract or breach of the implied covenant of good faith and fair dealing because he is not a party to the insurance contract." *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir.1999) (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973)).

Here, the only contract alleged is the insurance contract, which is incorporated by reference into the Complaint. That contract states that it is between Allstate

predominance of its business activities. Allstate's executive and administrative functions are centralized in Northbrook, Illinois; all

department heads are located there; regional offices refer decisions there and reports are directed there.

(the company named in the policy declarations) and Plaintiff; it also states that Anderson is the Allstate agent. Because Anderson is not a party to the insurance contract, he cannot be liable for a breach of that contract.

Accordingly, Plaintiff cannot state a claim for breach of contract against Anderson under well settled California law, and this claim is dismissed.

## 2. Negligence

Plaintiff's second cause of action for negligence alleges that:

> At all times relevant herein, Anderson, as the agent for Plaintiff had a duty of care to review, investigate and if necessary upgrade Plaintiff's insurance needs, at least annually. Defendant Anderson failed to discharge this duty by never seeking, inquiring or attempting to increase the policy limits of Meisel. As the proximate and direct result of [sic] breach of this duty, Meisel suffered a catastrophic loss to all his belongings, his home and effects, all amounting to damages to be proven at the time of trial.

Compl. at ¶¶ 43–45.

Defendant argues that Anderson was an agent of Allstate at all times and was acting within the scope of his employment and is not personally liable for his actions. Plaintiff argues that Anderson was not an employee or agent of Allstate and is liable.

The Ninth Circuit has held that it is "well established that, unless an agent or employee acts as a dual agent (a circumstance not present in this case), she cannot be held liable as a defendant unless she acts for her own personal advantage." *Mercado v. Allstate Ins. Co.*, 340 F.3d 824, 826 (9th Cir.2003); *Lippert v. Bailey*, 241 Cal.App.2d, 376, 50 Cal.Rptr. 478 (1966) (holding that liability to the insured for "acts or contracts of an insurance agent within the scope of his agency, with a full disclosure of the principal, rests on the company"). The court in *Mercado* stated that an employee becomes a " 'dual agent' by assuming special duties for the benefit of the insured beyond those required by her principal." *Mercado*, 340 F.3d at 826 n. 1.

The first question is whether Anderson was an agent for or employee of Allstate. Anderson's declaration indicates that from 1983 through 1996 he was an "Employee Agent" of Allstate. As such, he received a salary and benefits through Allstate and his day to day activities were under the instruction of and evaluated by Allstate. In 1996 Anderson became an "Exclusive Allstate Agent." As an "Exclusive Allstate Agent," Anderson no longer receives a salary or benefits from Allstate but rather obtains a commission from the sale of Allstate insurance. Anderson now makes his own tax withholdings. Anderson considers himself self-employed in that his day to day activities are not directly evaluated by Allstate. However, he continues to exclusively represent Allstate and he sells only Allstate approved product.

Plaintiff argues that, because Anderson admits he was self-employed and made his own tax withholdings, he is not an employee or agent of Allstate and is independently liable.

Plaintiff is incorrect. The insurance policy indicates that Anderson is the Allstate agent involved. The agency relationship did not terminate because Anderson stopped being paid a direct salary and benefits from Allstate. Further, Anderson was, as stated in his declaration, an employee of Allstate at all times. The means by which he was paid, salary versus commission, and his degree of personal autonomy are not determinative of whether Anderson was an agent for or employee of Allstate. Anderson was permitted by his

employment with Allstate to act on its behalf. It is beyond belief that Plaintiff was unaware that he was working with Allstate when he was working with Anderson.

■■■■■ The next question is whether Anderson was a "dual agent" as defined in *Mercado*. Under California law, a "dual agent" theory requires that the insurance agent act on behalf of the insured in some way beyond his capacity as an agent for the insurer. An insurance agent cannot be a "dual agent" unless he is either an independent broker or has a long-term, special relationship with the insured. *Charlin v. Allstate Ins. Co.*, 19 F.Supp.2d 1137, 1141 n. 2 (C.D.Cal.1998).

Here, Anderson declares that he was not an independent broker, which the California Insurance Code defines as a person who transacts insurance "with, but not on behalf of, an insurer." Cal. Ins.Code § 33. In contrast, an insurance agent is defined as "a person authorized, by and on behalf of an insurer, to transact" insurance. *Id.* at § 31. Nothing on the record defeats Anderson's assertion that he is an agent rather than a broker.

Similarly, there is no "special relationship" that exists here. In cases involving insurance companies California courts have held that "[t]he mere allegation in a complaint that [] an insured has purchased insurance from an insurance agent for several years and followed his advise on certain insurance matters is insufficient to imply the existence of a greater duty." *Jones v. Grewe*, 189 Cal.App.3d 950, 956, 234 Cal.Rptr. 717 (1987). Plaintiff alleges only that he has utilized Anderson's services for some time; the allegations do not indicate that they had anything other than

a run-of-the-mill insured-insurance agent relationship from which a special duty could arise.[2]

Because Anderson was an employee of Allstate and because he was not acting as a dual agent in his dealings with Plaintiff, Plaintiff cannot, under well settled California law, state a claim for negligence against Anderson. This claim is dismissed.

**ACCORDINGLY, IT IS ORDERED** that Allstate's motion to dismiss the claims against Defendant Anderson is GRANTED.

**FURTHER ORDERED**, that Plaintiff's motion to remand is DENIED.

IT IS SO ORDERED.

---

**2.** Plaintiff devotes much of his moving papers to a discussion of California cases that are not directly applicable in light of the Ninth Circuit's decision in *Mercado*. These cases discuss when a duty may arise in an insurer

based on certain actions. They do not address the respondeat superior issue that is the basis of Allstate's argument and a threshold issue.