Filed 6/5/14  Farzan v. Wescom Credit Union CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| YECHIEL FARZAN, | B247479 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC479740) |
| v. | |
| WESCOM CREDIT UNION et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County. Alan S. Rosenfield, Judge.  Affirmed.

Kane Law Firm, Brad S. Kane and John M. Morris for Plaintiff and Appellant.

O'Connor, Schmeltzer & O'Connor, Lee P. O'Connor and Timothy J. O'Connor for Defendant and Respondent Mercury Casualty Company.

Knapp, Petersen & Clarke, and Greta T. Hutton for Defendant and Respondent Wescom Central Credit Union.

Wood, Smith, Henning & Berman, Seymour B. Everett and David L. Martin for Defendant and Respondent Wescom Insurance Services, LLC.

_____

Plaintiff and appellant Yechiel Farzan caused a traffic accident and did not have automobile liability insurance, leaving him responsible for losses caused in the accident. Farzan filed this lawsuit alleging that acts and omissions of others created the circumstance of his lack of insurance. Farzan sued defendant and respondent Mercury Casualty Company (Mercury), which cancelled Farzan's automobile insurance policy before the accident for non-payment of premiums. Farzan also sued defendants and respondents Wescom Credit Union, which financed Farzan's auto loan, and Wescom Insurance Services, LLC, an insurance broker.

The trial court granted Mercury's motion for summary judgment and sustained without leave to amend a joint demurrer by Wescom Credit Union and Wescom Insurance. Farzan appeals both judgments. We affirm.

## FACTS

### *The Insurance Policy*

In May 2010, Farzan purchased a used Porsche Boxster from a local dealership. Wescom Credit Union financed the purchase with an auto loan. As a condition of the financing, Wescom Credit Union required Farzan to purchase automobile liability insurance, and to open a savings and checking account at Wescom Credit Union from which his monthly auto loan payment would be debited. Wescom Insurance assisted Farzan in obtaining the required auto insurance, arranging for him to purchase an auto liability policy from Mercury.

On June 17, 2010, Farzan submitted an application for auto insurance to Mercury, along with a check in the amount of $273.90 for the first month's premium. Farzan also executed an authorization form requesting Mercury to debit his Wescom Credit Union account on a monthly basis for the policy premiums. Mercury promptly issued a six-month auto insurance policy to Farzan for the period from June 19, 2010 to December 19, 2010. Beginning in July 2010, Farzan paid his monthly auto insurance premium to Mercury by debit from his Wescom Credit Union account.

2

In November 2010, Mercury sent documents to Farzan to renew his auto insurance policy for a six-month period from December 19, 2010 to June 19, 2011. On December 18, 2010, Mercury debited Farzan's monthly premium payment from his Wescom Credit Union account. The payment on December 18, 2010 was for the premium for coverage to be provided by Mercury for the period from December 19, 2010 to January 19, 2011.

On January 19, 2011, Mercury attempted to debit the next monthly premium, for coverage to be provided for the period from January 19, 2011 to February 19, 2011, from Farzan's account at Wescom Credit Union. The attempted debit was rejected due to insufficient funds. About four days later, Mercury again attempted to debit the monthly premium payment from Farzan's Wescom Credit Union account. Again, the attempted debit was rejected due to insufficient funds.

On January 28, 2011, Mercury mailed a letter to Farzan advising him that his bank had rejected his automatic premium payment due to insufficient funds, and that it was enclosing a notice of cancellation of his policy to become effective on February 8, 2011. Mercury advised Farzan that, to "reinstate" his policy, a payment in the amount of $232 had to be "received" before the February 8, 2011 date of cancellation. The enclosed "Notice of Cancellation" document provided in relevant part:

"*YOUR INSURANCE COVERAGE WILL TERMINATE ON FEBRUARY 8, 2011 AT 12:01 AM PT*.

"[¶] . . . [¶]

"Cancellation Reason

"NON PAYMENT OF PREMIUM

"Important Messages

"This notice does not extend or reinstate this policy. . . . [¶] Your check or direct debit has been returned unpaid by your bank. A $5.00 late fee and $15.00 returned check fee has been added to the amount due. To reinstate your policy, a payment for the amount due must be received in a Company office within 10 days of the mailing date shown above. If payment is received after the 10 days and we are able to reinstate your policy, there would be a lapse in coverage from 02/08/2011 12:01 AM until the payment

3

is received. Your policy will not be reinstated if your payment is received more than 10 days after the Coverage Will Terminate Date and Time shown above. If your policy is reinstated with a lapse in coverage a $5.00 reinstatement fee will be charged. This policy will not be reinstated unless all past due payments have been received by the Company."

Mercury did not receive any payment from Farzan prior to February 8, 2011, and, in accord with the Notice of Cancellation previously sent to Farzan, his policy canceled effective that date.

On February 22, 2011, Farzan was involved in a multi-vehicle accident. Farzan's roommate promptly reported the accident to Mercury.

On March 3, 2011, Mercury sent a bill to Farzan in the amount of $231 for the coverage it had provided under his auto policy for the period from January 19, 2011 to February 8, 2011. On March 7, 2011, Mercury received a payment from Farzan in the amount of $231.

By letter dated March 31, 2011, Mercury denied coverage for Farzan's accident for the reason that his policy had been cancelled effective on February 8, 2011, prior to the date of his accident.

Additional facts concerning Wescom Credit Union and Wescom Insurance are discussed below in addressing the trial court's ruling on their joint demurrer.

*The Litigation*

Farzan sued Mercury, Wescom Credit Union and Wescom Insurance. Farzan's operative first amended complaint (FAC) alleged two causes of action as to Mercury: breach of insurance contract and tortious breach of the covenant of good faith and fair dealing. Farzan's FAC alleged a single cause of action jointly as to both Wescom Credit Union and Wescom Insurance for professional negligence.

Mercury filed a motion for summary judgment or, alternatively, for summary adjudication of issues to Farzan's bad faith cause of action, and his claim for punitive damages. Wescom Credit Union and Wescom Insurance filed a joint demurrer to Farzan's FAC.

4

The trial court sustained the joint demurrer to Farzan's FAC filed by Wescom Credit Union and Wescom Insurance and entered a judgment of dismissal of Farzan's FAC as to Wescom Credit Union and Wescom Insurance. Thereafter, the court entered an order granting Mercury's motion for summary judgment.

**DISCUSSION**

**I.    Farzan's Appeal From the Grant of Summary Judgment in**
**Favor of Mercury**

Farzan first contends the trial court erred in granting Mercury's motion for summary judgment because he presented evidence showing the existence of disputed issues of fact. Specifically, Farzan argues he presented evidence showing that Mercury breached a contractual duty to continue attempting to debit his Wescom Credit Union account right up to the date of cancellation of his auto policy. Farzan argues the evidence shows that Mercury never alerted him that it would stop its attempts to debit his Wescom Credit Union account without notifying him. Farzan asserts the evidence shows he deposited sufficient funds in his Wescom Credit Union account as of January 26, 2011 to cover payment of his then past-due monthly premium. Thus, Mercury could have debited his payment from his Wescom Credit Union account before the cancellation date of February 8, 2011, and his insurance policy would have remained in effect on February 22, 1011, the date of his accident. Farzan is wrong on the contractual duty element of his argument, and thus wrong on his entire argument.

The authorization form executed by Farzan for his monthly premium payment to Mercury provided:

> "I authorize Mercury . . . to initiate monthly deductions from my bank account *when payments are due* for my Mercury account. *Payments will be withdrawn on the payment due date or the following business day*. . . ."

The policy renewal documents that Mercury sent to Farzan in November 2010, set forth various options for payment of his premiums for the policy period of December 19, 2010 to January 19, 2011. These options included "Full Pay" up front, or a "2 Pay"

5

or "3 Pay" plan, or "Automatic [Monthly] Payment." Mercury explained the "Automatic Payment" plan as follows:

> "First Payment (due December 18, 2010)                    $212.90
>
> *"$212.00 will be scheduled to be deducted on the 19th of each month.*"

Farzan does not dispute that he elected the "Automatic Payment" plan.

We see no contract language or evidence in the record which supports Farzan's argument that Mercury had a contractual duty to keep attempting to debit his Wescom Credit Union account to obtain his premium payment, day-after-day, right up to the date of cancellation of his auto insurance policy. The contractual language and the facts are not disputed; Farzan's true argument is that there is an issue of interpretation as to what Mercury was contractually obligated to do to obtain his monthly premium payment for his auto insurance policy.

Farzan's argument is that the term "payment due date" in the authorization form he executed to allow Mercury to debit his Wescom Credit Union account is ambiguous, and could be interpreted to equate the date of cancellation of his policy with the payment due date of his monthly policy premium. Farzan's argument is not persuasive. First, the authorization form stated that Farzan authorized Mercury to debit his bank account when "payments [were] due," and that payment would be withdrawn "on the payment due date or the following business day." The payment authorization form must be interpreted in relation to the unambiguous language in the policy renewal documents that Mercury sent to Farzan in November 2011. Those documents stated that Mercury would schedule to deduct each monthly payment "*on the 19th of each month.*" (Italics original). Plainly, the payment due date for Farzan's monthly premium was "the 19th of each month," and cannot reasonably be interpreted to be equated with the date of cancellation of his policy as stated in Mercury's Notice of Cancellation.

When Mercury's first attempt to debit Farzan's Wescom Credit Union account was returned for insufficient funds on January 19, 2011, Farzan at that instant stood in breach of his promise to pay his monthly premium on the payment due date. At that instant, Mercury could have initiated the cancellation procedures in the parties' contract

6

of insurance. The fact that Mercury tried a second time a few days after January 19, 2001 to debit Farzans' Wescom Credit Union account is not evidence tending to demonstrate that the insurer had a continuing duty, day-after-day, right up to the date of cancellation of Farzan's auto policy, to keep attempting to debit his account for payment. We need say no more.

Farzan next argues the trial court's decision to grant Mercury's motion for summary must be reversed because Mercury "waived" its cancellation of the parties insurance contract effective on February 8, 201, by accepting the payment he made on March 7, 2011. We disagree.

The undisputed evidence in the record is that Farzan owed $231 to Mercury as of the February 8, 2011 cancellation date of his policy — the past-due, unpaid premium for coverage extended by Mercury from January 19, 2011 to February 8, 2011. On March 3, 2011, Mercury sent a letter to Farzan advising him that his auto policy had been cancelled and that he owed Mercury a past-due, unpaid balance of $231. When Farzan paid $231 to Mercury on March 7, 2011, he did no more than pay his past-due bill for coverage that already been provided.

There is no evidence in the record to support a finding that Mercury waived the cancellation of the parties' insurance contract which had become effective on February 8, 2011. To accept Farzan's argument would mean that no insurer could seek payment of a past due bill on a cancelled policy without being charged with waiving cancellation of the policy. Waiver is a surrender of a claim, right, or privilege by acts that are inconsistent with the claim, right or privilege. Farzan is correct in the abstract that, when an insurer accepts a premium payment that is not timely paid in strict accordance with the terms of the parties' contract of insurance, the insurer may be deemed to have waived the ill-made payment. (See, e.g., *Huber v. New York Life Ins. Co.* (1936) 18 Cal.App.2d 269, 274.) The problem with Farzan's statement of law is that it has no application to the facts in his case. Here, there is no evidence tending to show that Mercury accepted a premium payment from Farzan that was not timely paid in accordance with the terms of their contract of insurance. On the contrary, the undisputed evidence shows that the parties'

7

contract of insurance was cancelled effective February 8, 2011, and Mercury thereafter sent Farzan a bill for coverage it had extended up to the date of the cancellation, which Farzan paid after the cancellation date.

## II. Farzan's Appeal From Sustaining the Demurrer in Favor of Wescom Insurance

Farzan claims the trial court erred in ruling that he failed to state a cause of action for professional negligence against Wescom Insurance. We disagree.

To state a cause of action for professional negligence, a plaintiff must allege the following elements: (1) the professional's duty of care to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. (See, e.g., *Mattco Forge, Inc. v. Arthur Young & Co*. (1997) 52 Cal.App.4th 820, 833 (*Mattco*) [duty of care of accountant]; and see, e.g. *Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954-955 (*Jones*) [elements of claim for professional negligence against insurance broker].)

Whether a defendant owes a duty of care in a given situation is a question of law for the court to decide. (*Wilson v. All Service Ins. Corp*. (1979) 91 Cal.App.3d 793, 796 (*Wilson*) [duty of care of insurance broker did not include duty to investigate a carrier's financial condition].) "A complaint which lacks facts to show that a duty of care was owed is fatally defective." (*Jones, supra*, 189 Cal.App.3d at p. 954.)

The published cases in our state impose a duty on an insurance broker "to use reasonable care, diligence, and judgment in *procuring* the insurance requested by its client." (*Kotlar v. Hartford Fire Ins. Co*. (2000) 83 Cal.App.4th 1116, 1123, emphasis added [dismissing negligence claim against insurance broker based on alleged failure to notify insured of policy cancellation]; see also *Nowlon v. Koram Ins. Center, Inc*. (1991) 1 Cal.App.4th 1437, 1447 [the duty of an insurance "is incurred in the procurement or issuance of an insurance policy"]; *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090, 1095-1096, italics omitted [an insurance broker's duty of care "does not include

8

responsibility for ensuring the insured has adequate coverage to protect against all eventualities"]; *Jones, supra*, 189 Cal.App.3d at p. 954 [insurance broker does not have a duty to advise the insured on specific insurance matters, nor to elicit information from the insured that might be pertinent to coverage].)

The duty to provide the insured with a notice of cancellation is imposed solely upon the insurance carrier, not the broker. (Ins. Code, § 677.2; *Kotlar v. Hartford Fire Ins. Co., supra*, 83 Cal.App.4th at p. 1123.) A broker has no duty to notify the insured of a carrier's intent to cancel a policy. (*Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1285.) Basically, once a policy has been obtained, the predominant relationship is between the insured and the insurer; a broker does not have further obligations, unless they are assumed by express agreement. (*Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 927.)

In the present matter, Farzan makes no allegations relating to any duty assumed by Wescom Insurance. He has not alleged that Wescom Insurance made any representation about coverage or payment of premiums. He claims his insurance should have been in effect when his auto accident occurred, but there are no facts alleged to show how or why Wescom Insurance had any involvement in keeping the policy in effect on the date of the accident. Indeed, there are no actual allegations of any kind showing any fact concerning Wescom Insurance. Farzan's professional negligence cause of action is premised entirely upon an alleged "agreement" to make payment of a premium created in the branch office of Wescom Credit Union on January 26, 2011. The circumstances of the agreement as alleged in Farzan's FAC are as follows:

On January 26, 2011, Farzan went to a branch of Wescom Credit Union, where he explained to a teller, "I am here to make my insurance payment." In vaguely pleaded language, Farzan alleged that the Wescom Credit Union teller "promised" to transmit Farzan's auto insurance premium payment to Mercury, and that, "[i]n reliance on [this] promise," he deposited $272 into his Wescom Credit Union account. Farzan alleged that he asked the teller to "make sure Mercury was paid 'right away,'" and the teller replied to him, "You are all good now."

9

These alleged facts do not state a cause of action for professional negligence, or even simple negligence, against Wescom Insurance. As noted above, a broker has no duty with respect to keeping an insurance policy in effect; the broker's duty is to use care in procuring the policy in the first instance. (*Kotlar v. Hartford Fire Ins. Co., supra*, 83 Cal.App.4th at p. 1123; *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.*, *supra*, 203 Cal.App.4th at p. 1285; *Fitzpatrick v. Hayes, supra,* 57 Cal.App.4th at p. 927.) Limiting a broker's duty to the procurement of insurance makes eminent sense. The insured and the insurer are in the best position to monitor and ensure that premiums are paid. It is not reasonable to expect a broker to check with the insured and or the insurer each month to confirm that a premium payment has been timely made.

Farzan's argument that he alleged facts showing Wescom Insurance entered into an "agreement" to remit his premium payment to Mercury is not persuasive. The fatal problem with Farzan's argument is that his pleading alleged he spoke only with a teller at Wescom Credit Union; Farzan did not allege that any person of authority affiliated with Wescom Insurance participated in the conversation at Wescom Credit Union on January 26, 2011. Farzan does not allege that he was communicating with Wescom Insurance regarding this payment, nor does he allege that he gave his premium payment to Wescom Insurance. As a matter of law, Farzan did not allege that he entered into an agreement with Wescom Insurance to pay his premium.

Farzan did not allege facts showing that Wescom Insurance knew or could have known Farzan had not maintained a sufficient bank account balance to pay his monthly Mercury premium, or that Wescom Insurance knew or could have known the payment to Mercury had not been made to Wescom Credit Union due to insufficient funds. What Farzan is attempting to do with Wescom Insurance is to shift the burden of making his premium payments onto the broker. There are no facts in Farzan's FAC to show that Wescom Insurance, in assisting Farzan to obtain an auto insurance policy, agreed to monitor each monthly payment and advise if it was not received properly. Such issues are between the insured and the carrier. The duty that Farzan argues to be recognized in

10

his case would fundamentally restructure the basic role of brokers into that of a personal financial manager, and would increase the cost of insurance to the wider detriment of society. Farzan's duty argument implicates policy choices that should not be judicially imposed. Unless the insurance broker assumes particular additional duties by contract, its obligations to the insured do not continue after the insurance policy requested by the client has been issued. To impose continuing duties upon the broker would transform the broker-client relationship into an indefinite one that could only create problems.

It is the insurer who bargains to carry obligations after the policy issues, not the broker. Farzan seeks to turn brokers into insurers. But California law and policy does not support forcing insurance brokers to act as surrogate insurers to all insureds under the policies they procure. We reject Farzan's attempt to extend Wescom Insurance's common law duties beyond placement of the policy, contrary to the common law of California.

Farzan next argues that none of this makes a difference because he alleged sufficient facts to show that Wescom Credit Union — more accurately, the teller at Wescom Credit Union — was acting an ostensible agent of Wescom Insurance. Apparently, Farzan is arguing that because the Wescom Credit Union teller was an ostensible agent of Wescom Insurance, the teller's "agreement" to make Farzan's payment was binding on Wescom Insurance. Alternatively, Farzan argues he was entitled to be granted leave to amend to expand upon his ostensible agency allegations. We find neither argument persuasive.

There are no facts alleged in Farzan's FAC to show that Wescom Credit Union's teller was acting as an ostensible agent of Wescom Insurance when the teller allegedly promised to remit Farzan's premium payment to Mercury. Farzan's cause of action for professional negligence merely refers to Wescom Credit Union and Wescom Insurance collectively by a single name — "Wescom" — and alleges that "Wescom" is liable for professional negligence for failing to remit payment of his premium to Mercury in a timely manner. Simply compressing the two entities into a single name does allege facts showing an ostensible agency relationship.

11

At best, at Paragraph 6 of Farzan's complaint, he alleges in conclusory terms that "the Defendants, and each of them, were acting on behalf of each of the remaining Defendants and were acting within the scope of their partnership, agency, employment and/or representative capacity." This is not sufficient. "In reviewing the sufficiency of a complaint against a general demurrer, we . . . 'treat the demurrer as admitting all material facts properly pleaded, *but not contentions, deductions or conclusions of fact or law*.'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*), italics added.) In short, to properly allege ostensible agency, Farzan needed to allege facts supporting his conclusory allegation that each defendant was an agent of the other. There simply are no facts alleged in Farzan's FAC to show a basis for Farzan to have believed that, when he was talking to Wescom Credit Union's teller, he was talking to someone with agency authority to represent Wescom Insurance.

Perhaps of equal importance, the introductory allegations of Farzan's FAC identify Wescom Credit Union as a California corporation and Wescom Insurance as a California limited liability corporation. California law presumes that a corporation is a separate legal entity existing under the authority of the state. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.) Farzan has failed to allege facts to overcome the presumption that Wescom Credit Union and Wescom Insurance exist as separate entities. Thus, to the extent Farzan impliedly argues that Wescom Credit Union and Wescom Insurance are alter egos of each other, he has not alleged facts showing such an alter ego relationship. The only alter ego allegations in Farzan's FAC allege are that "the Doe Defendants are alter egos of Mercury and/or Wescom." (Paragraph 7.) Farzan does not allege that Wescom Credit Union and Wescom Insurance are alter egos of each other.

This brings us to Farzan's argument that he should have been granted leave to amend to correct any defects in his ostensible agency allegations. Farzan is correct that leave to amend is liberally granted. (*Price v. Dames & Moore* (2001) 92 Cal.App.4th 355, 360.) At the same time, a trial court may deny leave to amend where there is no reasonable possibility that a defective pleading can be cured by further amendment.

12

(*Blank, supra,* 39 Cal.3d at p. 318.) A trial court's ruling to deny leave to amend is reviewed for abuse of discretion. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.) To demonstrate such an abuse of discretion , it is the plaintiff's burden to show a reasonable possibility that an adequate pleading could be alleged. (*Blank, supra*, 39 Cal.3d at p. 318; *Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902.)

Farzan did not in the trial court, and has not on appeal, proffered any amended language to show how he would allege that Wescom Credit Union and Wescom Insurance were ostensible agents of each other. In his opening brief on appeal, he says that no employee at either Wescom Credit Union or Wescom Insurance ever tells any of their customers that Wescom Credit Union and Wescom Insurance are separate entities. He argues that, as a result of this, employees at Wescom Credit Union's employees and Wescom Insurance's employees had at least ostensible authority to collect and transmit his monthly premium payment to Mercury. Farzan is missing a link in the chain. It may well be that an employee at Wescom Credit Union, i.e., the teller, had ostensible authority to bind Wescom Credit Union to an agreement to transmit Farzan's premium payment to Mercury. But the question here is whether the teller had ostensible authority to bind Wescom Insurance to an agreement to transmit Farzan's premium payment to Mercury. We see nothing in Farzan's arguments on appeal to show a possibility that he can allege facts to make the teller at Wescom Credit Union an ostensible agent of Wescom Insurance. The trial court did not abuse its discretion in denying leave to amend as to Wescom Insurance.

## III.    Farzan's Appeal as to Wescom Credit Union's Demurrer

As noted above, Farzan's cause of action for professional negligence against Wescom Credit Union alleged that he went to a branch of the institution on January 26, 2011, and explained to a teller, "I am here to make my insurance payment." In inartfully pleaded language, Farzan alleged that the teller at Wescom Credit Union "promised" to transmit Farzan's insurance premium payment to Mercury, and that, "[i]n reliance on [this] promise," he deposited $272 into his Wescom Credit Union account. Farzan

alleged that he asked the teller to "make sure Mercury was paid 'right away,'" and the teller represented to him, "You are all good now."

The issue presented by Farzan's appeal is whether these alleged facts state a cause of action *in tort* as to Wescom Credit Union.[1] Farzan intentionally or otherwise does not differentiate Wescom Credit Union from Wescom Insurance, but argues he alleged sufficient facts to state a cause of action for professional negligence against the "Wescom defendants." Here, we disagree as to Wescom Credit Union.

Farzan argues that Wescom Credit Union had an overall duty of care when transmitting his premium payments to Mercury, and that Wescom had a "greater duty of care" when transmitting his payment in January 2011 because it knew of his insufficient funds debits problems and "expressly agreed to pay his premium to Mercury right away." Farzan argues Wescom Credit Union breached its duty of care by failing to remit payment to Mercury in a timely manner.

We discussed the required elements for stating a cause of action for "professional negligence" above in addressing Farzan's appeal as to Wescom Insurance. We reiterate in short that a plaintiff must allege the following elements: (1) duty; (2) breach; (3) proximate causation; and (4) damages. (*Mattco, supra,* 52 Cal.App.4th at p. 833.) In light of the way in which Wescom Credit Union presented is demurrer, the issue here is duty.

Whether a defendant owes a duty of care in a given situation is an issue of law for a court to decide. (See, e.g., *Wilson, supra,* 91 Cal.App.4th at p. 796 [ruling that that insurance broker had no duty of care to client to investigate carrier's financial condition].) In determining whether a duty of care shall be imposed, a court is to consider whether a party may be required to compensate another who has been injured, based on a number of policy considerations involving the interests of the parties as well as society at large. (*Dillon v. Legg* (1968) 68 Cal.2d 728, 734.) "A complaint which

---

[1] Farzan unmistakably does not want to allege a cause of action in contract against Wescom Credit Union.

lacks facts to show that a duty of care was owed is fatally defective." (*Jones v. Grewe, supra*, 189 Cal.App.3d at p. 954.)

Wescom Credit Union argues that financial institutions which hold savings and checking accounts, of which it is one, do not owe a duty — as duty is understood in tort law — to remit payments to their depositors' creditors. Farzan's argument does not challenge this broad proposition. Rather, Farzan argues that the words spoken by Wescom Credit Union's teller created a contract that was binding on Wescom Credit Union to remit payment of his policy premium to Mercury, and also created a duty sounding in tort to perform the same task. Second, Farzan argues (he does so in the context of arguing to be granted leave to amend) that Wescom Credit Union had a duty "to notify [him] if he was actually required to go to Wescom Insurance's . . . office to make his premium payment or pay Mercury directly by a means other than auto debit."

We dispatch with Farzan's second duty argument first because it is the easiest to reject. There are no facts alleged in Farzan's pleading which would support a judicial determination that Wescom Credit Union had a duty imposed by law to notify him if he had to go to Wescom Insurance's office to make his premium payment, or to make his payment to Mercury directly by a means other than auto debit. The mode or manner for Farzan to pay Mercury was a matter between Farzan and Mercury under their contract of insurance.

Farzan's complaint does even begin to suggest that there was any way for Wescom Credit Union to have any knowledge about the manner in which Farzan was supposed to make his premium payments apart from the debit arrangement, let alone that would support imposition of a duty on Wescom Credit Union to advise Farzan on how to make his payments.

This brings us to Farzan's contract-based, negligence duty argument. The cases cited by Farzan do not support the proposition that the a contract duty he claims here may be  bootstrapped to create a duty as duty is understood in negligence law. Duties arising from a contract may be assumed, defined and delineated by the mutual agreement of the contracting parties. A duty of care under negligence law is imposed, defined and

15

delineated as a matter of law, and simply cannot be disclaimed.  Farzan seems to be arguing that Wescom Credit Union negligently performed a contract that it entered through its teller.  "Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort as well as a breach of the contract."  (*Kuitems v. Covell* (1951) 104 Cal.App.2d 482, 485 [roofing contract].)  The problem with the Farzan's pleading is that he has not alleged the formation of a definitive contract.  He has not alleged the teller's authority to bind the credit union, nor any definitive contract terms.

Farzan does not appear to want to state a claim for breach of contract.  So be it.  But he has not alleged a cause of action for professional negligence.

## DISPOSITION

The summary judgment entered in favor of Mercury is affirmed.  The judgment of dismissal as to Wescom Credit Union and Wescom Insurance is affirmed.  Respondents are awarded costs on appeal.


BIGELOW, P.J.


We concur:


RUBIN, J.



KUSSMAN, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16